324 So.2d 822 (1975)
STATE of Louisiana, Appellee,
v.
Stephen BERRY, Appellant.
No. 56734.
Supreme Court of Louisiana.
December 8, 1975.
Rehearing Denied January 16, 1976.
*824 James J. Gleason, III, Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Asst. Dist. Atty., for appellee.
TATE, Justice.
The defendant Berry was convicted of the April, 1973 murder of Jo Ellen Smith, La.R.S. 14:30 (1950), and sentenced to life imprisonment at hard labor.
On his appeal, he presents fourteen assignments of error. The most substantial issues relate to the defendant's plea of insanity at the time of the offense (Assignment 14), to the admission of evidence in connection therewith in alleged violations of the defendant's physician-patient privilege (Assignments 11-13), and to the admission of evidence in alleged violation of the defendant's clergyman-penitent privilege (Assignment 7).
Plea of Insanity (Assignment No. 14)
The defendant pleaded not guilty and not guilty by reason of insanity. La.C.Cr.P. art. 552. This plea tendered for *825 the jury's determination the accused's defense of insanity at the time of the offense. La.C.Cr.P. art. 816.
The present assignment of error was raised by the defendant's objection to the trial court's charge to the jury.
In accordance with La.R.S. 14:14 and La.C.Cr.P. art. 652, the trial court instructed the jury that the defendant had the burden of proving his insanity and that an individual is not relieved of responsibility for his acts unless he is determined to be incapable of distinguishing between right and wrong.
The defense contends (a) that the jury should have been instructed that a mental defect resulting in an irresistible impulse also constitutes insanity as a matter of law and (b) that the prosecutor should have the burden of proving sanity in a case in which insanity is urged as a defense.

(a)
As to the first contention, La.R.S. 14:14 provides that, if the circumstances indicate that because of a mental disease or mental defect the offender was incapable of distinguishing between right and wrong with reference to the conduct in question, the offender shall be exempt from criminal responsibility. This is a codification of the well known test in M'Naughten's Case, 1 Car. & K. 130, 10 Clark & F 200, 8 Eng. Repring. 178 (1843). See Reporter's Comment, Article 14 of the Louisiana Criminal Code, originally enacted by Act 43 of 1942.
In State v. Plaisance, 252 La. 212, 210 So.2d 323 (1968), the accused likewise contended that the M'Naughten rule is scientifically and legally inadequate. In rejecting this contention, we stated, 210 So.2d 326-27:
"The trial judge under the express provisions of the Code of Criminal Procedure must charge the jury with the applicable law of the case, i. e., `If the circumstances indicated that because of a mental disease or mental defect the offender was incapable of distinguishing between right and wrong with reference to the conduct in question, the offender shall be exempt from criminal responsibility.' R.S. 14:14. Counsel for defendant's contention that this law is outmoded and archaic and should be changed to the test of legal sanity prevailing in other jurisdictions referred to as the Durham Rule or that of irresistible impulse, is a matter that addresses itself to the legislature."
At 21 Am.Jur.2d, Criminal Law, Section 33, pp. 118-18, it is noted:
"The M'Naughten test has long been under attack on the ground that it adopts and enforces as a matter of law outmoded and erroneous psychological theories, and that it tends to limit or distort expert psychiatric testimony. The test, however, is not without its defenders. And so far no alternative to it has achieved general acceptance. Some courts which have indicated dissatisfaction or doubt with regard to M'Naughten have nevertheless refused to discard it, because of their dissatisfaction with suggested alternatives, or because they have felt that if such a change were to be made, it should be made by the legislature."
Our legislature has by La.R.S. 14:14 expressly adopted the M'Naughten test of insanity. We are cited to no authority by reason of which such adoption is beyond its power or offends constitutional guarantees. Whether wise or unwise, this legislative choice does not admit of judicial substitution of another test allegedly more scientifically based on modern psychiatric knowledge.

(b)
The second contention made by the defendant is that, although in accordance *826 with La.C.Cr.P. art. 652, the trial court erred in instructing the jury that the accused bore the burden of proving his insanity.
The defendant essentially contends that this statutorily-based charge violates the constitutional presumption of innocence to which those accused of a crime before our courts are entitled. La.Const. of 1974, Article I, Section 16. He further contends it violates federal due process requirements that the state must prove beyond a reasonable doubt every fact necessary to constitute the crime charged. Mullaney v. Wilbur, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975).
As the concurring opinion to Mullaney notes, 95 S.Ct. 1892-93, the same constitutional and historical reasons do not necessarily apply to a requirement that an accused bear the burden of proving his insanity at the time of the offense. Thus, where the jury is also instructed that the state must prove every element of the crime beyond a reasonable doubt, including (in this case) premeditation, a statute requiring an accused to bear the burden of disproving his sanity (presumed in all humans) does not violate due process. See Leland v. Oregon, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952).
Despite scholarly criticism that the requirement does infringe upon the presumption of innocence, see Comment, 30 La.L.Rev. 117 (1969) for summary, the contention has not been accepted by the United States Supreme Court, Leland v. Oregon, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952), nor in most jurisdictions in which it has been raised. See Annotation, InsanityProof, 17 A.L.R.3d 146 (1968).
The Louisiana decisions likewise have consistently upheld the defendant's burden of proving insanity, despite the burden of the state to prove every essential element of the crime charged. They are essentially based upon a perceived distinction between: on the one hand, criminal intent (the perception that certain consequences would flow from the accused's act), which is an essential element of the crime; and, on the other hand, mental incapacity (the appreciation of the wrongness of the conduct), which is a limited affirmative defense permitted to exculpate an accused from criminal liability for his wrongful acts committed with criminal intent. See analysis in Note, 20 La.L.Rev. 749 (1960). The defense is so limited and required to be affirmatively proved becuase of the presumption of sanity of human beings, a presumption based in part on the permissible societal value of imposing usual personal responsibility on individuals for their acts.
We are unwilling to accept the defendant's contention and therefore find no reversible merit in this assignment.
Alleged Violation of the Defendant's Physician-Patient Privilege (Assignments 11-13)
In rebuttal to the defendant's expert testimony as to his insanity (tending to show he was a schizophrenic who could not distinguish between right and wrong), the state tendered certain medical evidence. It consisted of the testimony of two psychiatrists, who had been appointed to a lunacy commission, and also of the testimony of a parish prison psychiatrist who had briefly examined the defendant before and after the present offense.
The defendant objected to the testimony of one of the court-appointed psychiatrists, insofar as (in making his diagnosis) he had without the consent of the accused referred to the accused's parish prison medical records and to Charity Hospital records. Assignment 11. The defendant also objected to the testimony of the parish prison psychiatrist (whose examination notes were the basis of the parish prison medical reports), on the ground that he had examined the accused without a court order and, consequently it is urged, the *827 medical information he had obtained could not be divulged without the consent of the accused. Assignment 12.
The defendant primarily relies upon the doctor-patient privilege recognized by La.R.S. 15:476, which provides that (except where "[the] physician, ... under the appointment of the court, and not by a selection of the patient, has made investigation into the patient's physical or mental condition") "no" physician is permitted, "unless with his patient's express consent, to disclose any communication made to him as such physician by or on behalf of his patient, or the result of any investigation made into the patient's physical or mental condition, or any opinion based upon such investigation, or any information that he may have gotten by reason of his being such physician * * *."[1]
This privilege, however, may be waived.
La.R.S. 15:478 provides: "The right to exclude the testimony ... is purely personal, and can be set up only by the person in whose favor the right exists. If the right is waived, ... the physician... may be examined and cross-examined to the same extent as any other witness."
This waiver may be by the express consent of the patient. See La.R.S. 15:476, quoted above. However, the waiver may also result from other circumstances by which the patient impliedly waives his right to claim the privilege. 8 Wigmore on Evidence, Sections 2388-90 (McNaughton Rev. 1961); McCormick on Evidence, Section 103 (2d ed., 1972).
The legislature has not specified the circumstances in which such implied waiver occurs under La.R.S. 15:476, 478, which are applicable to criminal proceedings.
However, in subsequently providing for the physician-patient privilege in civil proceedings, the legislature provided for typical waiver situations. La.R.S. 13:3734 (1968). One is where a party brings a suit to recover for personal injuries and thus places those injuries at issue; by bringing the action, he waives his right to claim the privilege as to any physicians who have prescribed for or treated him for such injuries.
Analogously, in the present situation, the accused filed a plea of not guilty by reason of insanity at the time of the commission of the offense. In response to his application, a lunacy commission was appointed. La.C.Cr.P. art. 650. He did not withdraw his plea of not guilty by reason of insanity but proceeded to trial of it before the jury. La.Cr.P. art. 651.
Under such circumstances, his tender of the issue of insanity waived his right to claim the doctor-patient privilegeand not only as to the medical reports he voluntarily furnished the examining physicians, and as to the psychiatrist who testified on his behalf.
By tendering his mental condition to the jury, he waived his right to claim the privilege as to other psychiatric medical evidence relevant to determination of the issue, such as (in this instance) prior medical *828 examination and diagnosis as to the mental condition he now claims exonerates him from criminal responsibility. By claiming, the benefits of his plea of insanity, he cannot offer that from the past or present which is favorable to his contention, but at the same time withhold from the jury's consideration (if the state offers it) that which is unfavorable to his plea.Cf. State v. Genna, 163 La. 701, 715, 112 So. 655 (1927) (syllabus 14).
Of course, such an implied waiver should not be deemed to include testimony as to information obtained by physicians as a result of prior examinations which is irrelevant to the present proceeding or in which the prejudicial effect on the merits outweighs its probative value to the narrow issue of insanity so tendered. In short, the implied waiver we judicially recognize is to be narrowly construed in accordance with its limited purpose.
Here, the court-appointed examining physician used prior medical records as a partial basis for his opinion, State v. Fallon, 290 So.2d 273, 291 (La. 1974), while another physician testified as to his own routine mental examinations, conducted in the course of routine prison examination, and his consequent mental diagnosis of the patient as to the mental illness now at issue. Both of these instances are included within the narrowly-construed implied waiver of the privilege resulting from tendering the plea of insanity to the trial jury.
Additionally, the defendant also claims a doctor-patient privilege as to the physical examination made of him by the coroner soon after his arrest. Assignment 13. The coroner's testimony was apparently introduced to negative defense testimony that the accused had been beaten at the time. The coroner did not testify as to anything other than the results of his physical examination of the accused.
An in-custody physical examination of an accused by a state physician for the limited purpose of making objective findings as to his physical condition is not protected by the doctor-patient privilege:
In the first place, the privilege does not attach unless the patient has consulted the physician for treatment or for diagnosis. 8 Wigmore on Evidence, Section 2382(2) (McNaughton Rev. 1961); McCormick on Evidence, Section 99 (2d ed., 1972). In the second place, the accused was in custody as a result of a lawful arrest, and no constitutional protection is violated by a physical examination incident to a usual custodial arrest and incarceration, nor by introducing into evidence the results thereof. Cf. United States v. Edwards. 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974).
Accordingly, we do not find merit in any of these assignments.
Alleged Violation of the Defendant's Clergyman-Penitent Privilege (Assignment 7)
On the evening of the murder, the defendant came to the apartment of a sister of a minister. The minister's sister, the minister, and a lady friend were there.
The defendant objected to the introduction of the minister's testimony as to the accused's admissions at the time. The basis of the objection was that disclosure would violate the clergyman-penitent privilege provided by La.R.S. 15:477: "No clergyman is permitted, without the consent of the person making the communication, to disclose any communication made to him in confidence by one seeking his spiritual advice or consolation * * *."
The trial court required the predicate for assertion of the privilege to be heard outside the presence of the jury. After hearing *829 evidence, the court determined that the privilege did not apply.
The evidence was: The defendant came to the apartment to pawn a watch. After the minister's sister refused to loan him the money, he asked to speak to the minister. He then told the minister that he had gotten the watch from a girl he had killed and needed $8.00 or else he might hurt someone else. (The minister then loaned him $8.00 and took the watch, and subsequently turned it over to the police.)
We are unable to find error in the trial court's factual appreciation that the primary purpose of this visit was not to seek spiritual advice or consolation, nor in its finding that, in the totality of circumstances presented (including that the communication was made in the presence of two other persons), the communication was not made within the requisite nature of a confidential disclosure for religious purposes of a penitent to a clergyman seeking religious consolation. 8 Wigmore on Evidence, Section 2396 (McNaughton Rev. 1961).
We find no merit to this assignment.
Other Assignments of Error
Assignments 1, 3, 4, 8, and 9 are not argued on this appeal and are deemed abandoned. The remaining assignments do not require extended comment, being governed by well-settled principle of law or presenting no substantial issue of error.
Assignment 2 relates to the trial court's failure to require the state to produce pre-trial any oral inculpatory statements of the accused in its possession. See State v. Davis, 309 So.2d 335 (La. 1974). (The state did furnish the accused with a copy of a written statement by the accused.) In reliance upon past jurisprudence, the trial did not require pre-trial oyer of any oral inculpatory statement. We have held that such a ruling does not entitle a defendant to reversal of a conviction. State v. Major, 318 So.2d 19 (La. 1975); State v. Watson, 301 So.2d 653 (La.1974).
Assignments 5 and 6 relate to the admission into evidence of the coroner's report and of the proce's verbal of the autopsy of the decedent showing the cause of death, and to the questioning of the assistant coroner as to the conclusions of the pathologist as to the causes of the death (bullet wounds and multiple skill fractures) based upon such documents.
The proce's verbal and report are admissible as competent evidence of death, La.C.Cr.P. art. 105, La.R.S. 33:1565, State v. Hayden, 171 La. 495, 131 So. 575 (1930), at least where no confrontation rights are denied by the failure to allow cross-examination of an expert whose opinion is incorporated therein, see California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489 (1970). The testimony of the present witness, the assistant coroner who actually pronounced the victim dead at the scene, is also admissible, even though in part based upon the proces vergal of the pathologist. State v. Jones, 320 So.2d 182 (La.1975).
Assignment 10 relates to the failure of the trial court to require Timothy Rudolph to claim before the jury his Fifth Amendment privilege against self-incrimination.
The defendant had subpoenaed Rudolph as a witness. On the state's motion, the jury was excluded for the court to determine whether Rudolph would be a witness in the case.
Rudolph took the stand, was sworn, and was determined to be competent. Through his counsel, he then asserted his Fifth Amendment privilege against testifying.
*830 The trial court ruled that he was entitled to this claim.
The defendant objected to the exclusion of the jury and to the court's ruling which permitted the witness to claim his Fifth Amendment privilege outside the presence of the jury.
It is improper conduct for either the prosecution or the defense knowingly to call a witness who will claim a privilege, for the purpose of impressing upon the jury the fact of the claim of privilege. American Bar Association Standards of Criminal Justice, Relating to the Prosecution Function, Standard 5.7(c), and Relating to the Defense Function, Standard 7.6(c) (1971).
As the commentaries to these standards indicate, claims of privilege are preferably determined outside the presence of the jury, since undue weight may be given by a jury to the claim of privilege and due to the impossibility of cross-examination as to its assertion. (The commentaries also note the impropriety of either counsel arguing any inference from the failure of another to call a witness, if the failure to do so is known to be based on the witness's claim of privilege.) For similar reasons, the courts have uniformly rejected a defendant's claim of error based upon the denial of his request that a witness assert his claim of privilege before the jury. See United States v. Lacouture, 495 F.2d 1237 (CA 5, 1974), and decisions therein cited. See also Namet v. United States, 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963).

Decree
For the reasons assigned, we affirm the conviction and sentence.
Affirmed.
NOTES
[1] In brief to this court, he also relies upon La.R.S. 44:7 (as amended by Act 112 of 1962; the enactment in effect at the time of the trial). This section provides an exemption from the Public Records Act, La.R.S. 44:1 et seq. (1950).

However, the purpose of the Public Records Act is to provide for immediate public inspection of public records, La.R.S. 44:31-33, not to create a privilege exempting them from production for court purposes. Cf. State v. Babin, La., 319 So.2d 367, 375 (1975). Further, the 1966 version of 44:7 in subsection B expressly recognized that medical records could be "exhibited or copied by or for persons legitimately and properly interested in the disease, mental or physical, or in the condition of patients."
The cited statutory provision is not relevant to determination of the present issue.