332 So.2d 245 (1976)
STATE of Louisiana
v.
Mike DUHON.
No. 57141.
Supreme Court of Louisiana.
March 29, 1976.
Dissenting Opinion May 14, 1976.
Scotty G. Rozas, Lake Charles, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Frank T. Salter, Jr., Dist. Atty., Adam L. Ortego, Jr., Asst. Dist. Atty., for plaintiff-appellee.
Dissenting Opinion of Summers, J., May 14, 1976.
DIXON, Justice.
The defendant, Mike Duhon, was charged jointly with one Joseph Clark by bill of information with the crime of armed robbery in violation of R.S. 14:64. On the day of the trial, with the prospective jurors already in the courtroom, the State orally moved to sever the case and try only Duhon at that time. The defendant was then convicted and subsequently sentenced to twenty years imprisonment. On appeal he relies on four assignments of error. We find merit in Assignments Two, Three and Four.
Assignment of Errors Nos. 2, 3 and 4
During the course of the trial, the prosecutor called Joseph Clark, the severed co-defendant, to the stand. The defendant objected, primarily on the ground that Clark's production was not fairly within the scope of the opening statement of the prosecutor, as required by C.Cr.P. 769. The trial judge overruled the objection.
When Joseph Clark took the stand, the following exchange took place:
"Q Where are you presently residing or staying, Mr. Clark?
A Route 2, Box 753, Westlake, Louisiana.
Q That is your home address?
A Yes.
Q But, are you living there right now?
A No.
Q Have you ever been convicted of a crime?
A Yes.
Q What was that, sir?
MR. ROZAS: We're going to object, Your Honor. I don't know the relevance of this matter
*246 THE COURT: The objection will be maintained at this time.
A Armed robbery.
THE COURT: Strike the answer. Ladies and gentlemen of the jury, you are to disregard completely the last answer given by the witness because the Court maintained the objection by the defense counsel to the question, and you are to completely ignore it as if it had never been answered."
The defendant moved for a mistrial, which was denied, the judge being of the opinion that his admonition was sufficient to cure any prejudicial effect of the answer.
Thereupon, this exchange followed between the prosecutor and Joseph Clark:
"Q Mr. Clark, do you know the defendant here, Mike Duhon?
A I plead the Fifth Amendment.
MR. RICHARD: I'm sorry . . .
THE COURT: He said he pleads the Fifth Amendment.
Q Did you see Mike Duhon on November 15, 1974?
A I plead the Fifth Amendment.
Q Do you know where Junior's Grocery Store is on the Old . . .
A I plead the Fifth Amendment."
Following his conviction, the defendant moved for a new trial, assigning as grounds therefor not only those related above, but also the fact that the prosecutor called Joseph Clark to the stand, even though he knew that Clark would assert his Fifth Amendment privilege not to testify.
While the trial judge denied the motion for a new trial, he did so only because he knew of no authority which would have allowed him to prevent the prosecutor from calling Clark to the stand, even though the prosecutor knew that Clark would plead the Fifth Amendment. That the judge in fact felt a new trial was warranted is reflected in his per curiam to his denial of the motion for a new trial:
"The major problem I had with the case was the fact that the State called co-defendant Clark as a witness and made him take the Fifth Amendment before the jury, in spite of the fact that the State knew he would refuse to testify.
The District Attorney stated that he wanted the jury to see the co-defendant to verify the testimony of the witnesses concerning his appearance. This, in my opinion, was not necessary or relevant to the case.
I did not know of any law which would have permitted me to maintain defense counsel's objection to the State calling the co-defendant Clark as a witness. I felt that the action by the State in making co-defendant Clark take the Fifth Amendment in the presence of the jury, when the State knew in advance of calling him that he would, was highly prejudicial to the defendant. I further felt that the questions propounded to co-defendant Clark about committing crimes added to the prejudice of the rights of the defendant.
Since I did not know of any law which gave me the authority to tell any party in a criminal proceeding whom they may or may not call, I felt compelled to overrule the motion for a mistrial. However, I do feel that the actions of the State, as outlined above, was highly prejudicial to the rights of the defendant.
I am aware of the case of State v. Haynes, 291 So.2d 771, with Justice Tate as the organ of the Court. The footnote indicates this type of action by the prosecutor can constitute unprofessional conduct.
In reflecting on this case, I now feel that I should have declared a mistrial."
The State, in its brief, asserts that there is no evidence that the prosecutor knew *247 Clark would refuse to testify. We believe that a fair reading of the record compels a contrary conclusion. It is apparent, as it was apparent to the trial judge, that the prosecutor either knew or had strong reasons to suspect that Clark would refuse to testify. Additionally, before Clark was questioned by the prosecutor, the judge advised him of his Fifth Amendment rights, and Clark responded that he was unwilling to answer any questions about the armed robbery. Nonetheless, the prosecutor forced him to assert his Fifth Amendment privilege before the jury. This constitutes reversible error.
In State v. Berry, 324 So.2d 822 (La. 1975), the defendant wanted to call a witness to the stand in order to force that witness to assert his Fifth Amendment privilege in front of the jury. The trial judge refused to allow the defendant to call the witness to the stand because it was clear, after a hearing outside the jury's presence, that the witness would in fact assert a valid Fifth Amendment privilege. This court affirmed, stating, at 324 So.2d 830:
"It is improper conduct for either the prosecution or the defense knowingly to call a witness who will claim a privilege, for the purpose of impressing upon the jury the fact of the claim of privilege. American Bar Association Standards of Criminal Justice, Relating to the Prosecution Function, Standard 5.7(c), and Relating to the Defense Function, Standard 7.6(c) (1971).
As the commentaries to these standards indicate, claims of privilege are preferably determined outside the presence of the jury, since undue weight may be given by a jury to the claim of privilege and due to the impossibility of cross-examination as to its assertion. (The commentaries also note the impropriety of either counsel arguing any inference from the failure of another to call a witness, if the failure to do so is known to be based on the witness's claim of privilege.) For similar reasons, the courts have uniformly rejected a defendant's claim of error based upon the denial of his request that a witness assert his claim of privilege before the jury. See United States v. Lacouture, 495 F.2d 1237 CA 5, 1974), and decisions therein cited. See also Namet v. United States, 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963)."
Similarly, in State v. Haynes, 291 So.2d 771 (La.1974), this court indicated that it is improper for the prosecutor to call the defendant's wife to the stand in order to force her to claim her spousal privilege before the jury. See American Bar Association Standards For Criminal Justice, Relating to the Prosecution Function, Standard 5.7(c):
"A prosecutor should not call a witness who he knows will claim a valid privilege not to testify, for the purpose of impressing upon the jury the fact of the claim of privilege. In some instances, as defined in the Code of Professional Responsibility, doing so will constitute unprofessional conduct."
It was therefore an error of law, as the trial judge in fact recognized, to deny the defendant's motion for a new trial. The action of the prosecutor in calling a co-defendant to the stand who he knew would assert a Fifth Amendment privilege substantially prejudiced the defendant. C.Cr. P. 851(5).
Accordingly, the conviction and sentence are reversed and set aside, and the case is remanded for a new trial.
MARCUS, J., dissents and assigns reasons.
SUMMERS, J., dissents and assigns reasons.
MARCUS, Justice (dissenting).
The prosecutor's action in calling the severed co-defendant to testify violated none of the accused's constitutional or statutory rights.
Assuming that error was committed, defendant waived such error. When the prosecutor called the severed co-defendant *248 as a witness, defendant objected that his production was not fairly within the scope of the prosecutor's opening statement. The trial judge properly overruled the objection based on that ground. The prosecutor's subsequent questioning of the witness, to which the witness invoked his privilege against self-incrimination, met with no objection from defendant.
Again assuming that the prosecutor erred in calling the severed co-defendant to the stand, his action did not constitute an error of law at the time defendant filed his motion for a new trial, since the error had been waived. Although the trial judge had the authority to grant a new trial to serve the ends of justice under article 851(5) of the Code of Criminal Procedure even where an error had been waived, his refusal to grant a new trial under these circumstances is not an error of law that would be subject to appellate review. La.Code Crim.P. art. 858 (1966).
I therefore respectfully dissent from the reversal of this conviction and sentence.
SUMMERS, Justice (dissenting).
I dissent for the reasons assigned by Mr. Justice Marcus.