362 So.2d 503 (1978)
STATE of Louisiana, Appellee,
v.
Gloria AUCOIN, Appellant.
No. 61462.
Supreme Court of Louisiana.
September 5, 1978.
Fredric G. Hayes, Lafayette, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Nathan Stansbury, Dist. Atty., for plaintiff-appellee.
TATE, Justice.
The defendant, Mrs. Aucoin, was convicted of first degree murder, La.R.S. 14:30 (1976). At the sentencing hearing following the guilty verdict, see La.C.Cr.P. art. 905 et seq. (1976), the jury recommended life imprisonment. The defendant was sentenced in accordance with this recommendation.
We need discuss only Assignment 1 of the two assignments of error presented by this appeal. (Assignment 2 relates to the allegedly improper admission of prejudicial *504 evidence at the sentencing hearing following the guilty verdict, at this hearing the jury reached a recommendation as to whether the defendant shall be sentenced to death or instead to life imprisonment. La. C.Cr.P. art. 905.7. Since the jury recommended the less severe of the two permissible penalties to be recommended, the error, if any, was harmless.)
Assignment 1
By this assignment, the defendant complains that her personal physician, a psychiatrist, retained by her husband was, over her objection, permitted to testify as to his conclusion that she was sane and as to the results of psychological testing tending to corroborate this conclusion.
The defendant forcefully contends that the ruling which permitted such testimony to be received is directly contrary to the physician-patient privilege provided by La. R.S. 15:476.[1] This enactment prohibits a physician from disclosing any communication, result, opinion, or information obtained as a result of his employment for a patient, "unless with his patient's express consent." The enactment exempts from its scope only physicians appointed by the court and also the cross-examination of any physician upon the correctness of any certificate issued by him.
The defendant had pleaded not guilty and not guilty by reason of insanity. La.C.Cr.P. art. 552. At the time the state called her physician to testify, she had not withdrawn her plea raising the insanity defense.
After the defendant was charged with the offense, her lawyer had requested the psychiatrist to examine her. The psychiatrist met with the defendant on two occasions, discussed her mental state with her, subjected her to two series of psychiatric tests and analyzed the test results, and assigned medication "for nervousness and to let her sleep."
Defense counsel subpoenaed the psychiatrist, but did not call him to the stand. On rebuttal, the state called the psychiatrist to the stand. He testified that in his opinion defendant was sane at the time the offense was committed. Defense counsel objected to his taking the stand, claiming the physician-patient privilege, La.R.S. 15:476.
State v. Berry, 324 So.2d 822 (1975), is dispositive of this objection. There, we held the physician-patient privilege to have been waived by defendant's decision to plead the insanity defense, 324 So.2d 827-28:
"By tendering his mental condition to the jury, he [the defendant] waived his right to claim the privilege as to other psychiatric medical evidence relevant to determination of the issue, such as . . . prior medical examination and diagnosis as to the mental condition he now claims exonerates him from criminal responsibility. By claiming, . . . the benefits of his plea of insanity, he cannot offer that from the past or present which is favorable to his contention, but at the same time withhold from the jury's consideration (if the state offers it) that which is unfavorable to his plea."
The defendant's counsel argues, however, that the present situation is distinguishable from Berry: There, two of the physicians had been appointed to a lunacy commission, La.C.Cr.P. art. 650, to examine the accused,[2] *505 and the third physician was a prison doctor not actually employed by him for treatment; while here, it is contended, the patient had herself employed the physician for her own purposes and he had treated her as a patient (i. e., had prescribed medication).
Nevertheless, the rationale for the implied waiver in Berry was not the status of the particular doctors, but the defendant's tender of his mental state as an issue in the trial. The only limitation there announced is that, by tendering his mental health as an issue, the defendant waives the privilege only as to such information as is genuinely relevant to the narrow issue there tendered, provided also that its probative value outweighs its prejudicial effect. 324 So.2d 828.
We recognize that our holdings here and in Berry raise difficult questions, not only of how to protect the psychiatrist-patient relationship (yet avoid misuse of it beyond its intended purpose), but also of statutory construction. For, indeed, the statute seems to require the "express"(not implied) waiver of the privilege by the patient. See La.R.S. 15:476 quoted in full in footnote 1.
These questions are resolved, however, by application of the principles that underlie evidentiary privileges. Four conditions are generally recognized as necessary for the establishment of a privilege against disclosure of a communication: first, the person who made the communication must then have intended it to be kept confidential; second, this element of confidentiality must have been essential to the relationship between the parties; third, the relationship must be one that society wishes very much to encourage; fourth, injury to the relationship that would result from disclosure must be greater than the benefit gained by giving the trier of fact access to the truth. 8 Wigmore on Evidence, Section 2285; (McNaughten Rev., 1961); see McCormick on Evidence, Section 99 (2d ed. 1972).
The doctor-patient privilege did not exist at common law. Since its widespread statutory adoption, it has been severely criticized, because it arguably meets only one of the four traditional tests. Obviously, the physician-patient relationship should be fostered; but it is doubtful whether most physician-patient communications are truly intended to be kept in confidence, or whether people would stop going to doctors if they feared disclosure. 8 Wigmore, Section 2380a; McCormick, Sections 98, 105.
In the case of communications to psychiatrists, however, the need for the privilege is clear. "On account of the special therapeutic need for assurance to the patient of protection against disclosures it is cogently argued . . . that even in states not having the physician-patient privilege generally, a privilege should be recognized . . . for confidential disclosures to psychiatrists. . . ." McCormick, Section 99 n.9. Thus, while any assertion of the doctor-patient privilege granted by La.R.S. 15:476 must be examined in light of the purposes of the statute, it is likely that communications to psychiatrists will be more often within the scope of the statute than ordinary doctor-patient communications.
As applied to the physician-patient relationship, the principles justifying evidentiary privileges have resolved themselves into several rules or restrictions.
One circumstance which will take a communication outside the scope of the privilege is the patient's waiver, express or implied. La.R.S. 15:476 provides that such waiver must be by "express consent" of the patient. Consequently, it would seem that an implied waiver strongly favored by commentators the patient's consent logically inferred from his actionsdoes not operate in Louisiana to defeat an assertion of the privilege.
There is, however, a third set of circumstances described by the commentators as a "waiver": when the conduct of the person claiming the privilege "(though not evincing that intention) places the claimant in such a position, with reference to the evidence, that it would be unfair and inconsistent *506 to permit the retention of the privilege." 8 Wigmore, Section 2388(3).
Description of such conduct as a "waiver" is perhaps inaccurate, since the claimant does not wish to abandon the privilege. Rather, the rule is an implied restriction on the use of the privilege, to prevent its assertion in circumstances which do not advance its fundamental purposes: This restriction or non-application of the privilege is implied as intended by reason of its purposes when created by legislation or recognized by jurisprudence.
As the commentators note, the physician-patient privilege is not an incompetency statute, excluding certain witnesses or evidence because of presumed untrustworthiness. Rather, it is a statutory privilege, excluding a certain class of information, which may well be highly reliable, in order to advance an intended social policy. Accordingly, it may be appropriate for courts to inquire whether the information sought to be excluded is really in the class whose exclusion will advance the policy, and which was therefore intended to be excluded. Since the "fairness" restriction implied from the purpose of rule has nothing to do with waiver, such an inquiry is not barred by the language of La.R.S. 15:476 to the effect that the patient's consent to disclosure by the physician must be express.
Where, as here and in Berry, a defendant puts his mental health at issue, then seeks to prevent the disclosure of evidence relevant to his mental health, we are not confronted with an adverse party prying into the private details of the patient's past life in an effort to prove a case against him. In fact, the patient is not trying to hide the embarrassing, humiliating or repugnant disclosures he might have made to the psychiatristthe sort of disclosures for which confidence is required. On the contrary, he is trying to bar the psychiatrist's conclusion that he was a normal, healthy individual.
Further, where the opposing party seeks to prove the patient's sanity, thenwhether the patient has (as here) or has not already committed a crimethe fear of a future public disclosure of his sanity can hardly be viewed as a deterrent to the patient's seeking psychiatric help.
It should be stressed that the defendant's plea of insanity places outside the privilege only information relevant to that narrow issue. The trial judge also has a responsibility to weigh the prejudicial effect of such relevant information against its probative value. Factors to be considered in this balancing process include the threat that disclosure of certain confidences, although relevant and not privileged, would undermine the psychiatrist-patient relationship by creating a widespread public impression that the privilege is ineffectual; the possibility that certain evidence relevant to sanity might damage the defendant by its relevance to other aspects of the case; the remoteness of the psychiatrist's examination from the time of the commission of the crime; and the possibility that certain disclosures might encourage the jury to convict the defendant because he is a bad or dangerous man, irrespective of his guilt or innocence of the crime charged.
In this case, the psychiatrist was simply asked about his professional contacts with the defendant and whether he thought she was sane. Neither the psychiatrist-patient relationship nor the defendant's right to a fair trial was thus endangered.
Accordingly, we find no merit to the error assigned.

Decree
We affirm the conviction and sentence.
AFFIRMED.
SUMMERS, J., dissents.
DIXON, J., dissents with reasons.
DIXON, Justice (dissenting).
I respectfully dissent. R.S. 15:476 clearly prohibits the testimony of the physician as to the result of his investigation into his patient's mental condition, unless with her "express consent."
NOTES
[1] La.R.S. 15:476 provides in full:

"No physician is permitted, whether during or after the termination of his employment as such, unless with his patient's express consent, to disclose any communication made to him as such physician by or on behalf of his patient, or the result of any investigation made into the patient's physical or mental condition, or any opinion based upon such investigation, or any information that he may have gotten by reason of his being such physician; provided, that the provisions of this article shall not apply to any physician, who, under the appointment of the court, and not by a selection of the patient, has made investigation into the patient's physical or mental condition; provided, further, that any physician may be cross-examined upon the correctness of any certificate issued by him."
[2] By its express terms, La.R.S. 15:476 does not afford a physician-patient privilege where doctors have been appointed by the court to inquire into the patient's mental or physical condition; but the complaint was that, without the express consent of the accused, one of these psychiatrists had obtained access to pre-appointment medical records concerning pre-appointment diagnoses and treatment.