404 So.2d 239 (1981)
STATE of Louisiana
v.
Harden JOHNSON and James Kelly.
No. 81-KA-0033.
Supreme Court of Louisiana.
September 8, 1981.
Rehearing Denied October 16, 1981.
*242 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Lindsay Larson, John Craft, Louise Korns, Asst. Dist. Attys., for plaintiff-appellee.
Lawrence J. Boasso and William Noland, New Orleans, for Kelly.
Roy V. Ladner, New Orleans, for Johnson.
WATSON, Justice.[*]
Defendants, Warden Johnson and James Kelly, were charged by bills of information with two counts of possession with intent to distribute controlled dangerous substances, to-wit: Preludin and Dilaudid. A jury found James Kelly guilty as charged and Harden Johnson guilty of possession.
Kelly was adjudicated a third offender and sentenced to twenty years at hard labor on Count I and ten concurrent years at hard labor on Count II. Johnson was sentenced to three concurrent years in Parish prison on each count. The two defendants have appealed their convictions and sentences.

FACTS
Search warrants were issued for apartments E and F in the Magnolia Housing Project. Two officers banged on the back door of apartment E and Harden Johnson exited through the front door of Apartment F into the arms of two other police officers. There are separate stairwells for the front and rear entrances of the two third floor apartments. The officers entered apartment F with Johnson and discovered James Kelly in the bathroom attempting to dispose of a bottle marked Vitamin C. The bottle which was removed from the commode contained eighty yellow tablets and forty-eight pink tablets. The yellow pills were Dilaudid, a trade name for dihydromorphinone, which is an opium derivative or "downer". The pink pills were Preludin (phenmetrazine) a stimulant or "upper". The testimony was that Preludin tablets have a street value of approximately $18 each and Dilaudid tablets have a street value of from $35 to $55 each. Apartment F is the residence of Harden Johnson. James Kelly was a visiting friend. Also arrested in apartment F was Carlin Morgan. A brown lady's purse in apartment F contained $316.00.
The bills of information charge the crimes under the wrong statute. Both Preludin or phenmetrazine, and Dilaudid are Schedule II drugs. LSA-R.S. 40:964. Defendants were charged with possession and intended distribution of Schedule IV drugs under LSA-R.S. 40:969, whereas they should have been charged under LSA-R.S. 40:967, which deals with Schedule II drugs.
The Louisiana Constitution of 1974 in Article 1 § 13 provides that an accused in a criminal prosecution shall be informed of the nature and cause of the accusation against him. An information is a written accusation of crime. LSA-C. Cr.P. art. 384. It must inform the defendant of the statutory basis of his offense. State v. Gainey, 376 So.2d 1240 (La., 1979). However, clerical errors in statutory citations do not warrant reversal of convictions. State v. Hamilton, 297 So.2d 419 (La., 1974). If an indictment states the essential facts of an offense charged, an error or omission in the statutory citation does not require reversal of a conviction if the error or omission did not mislead the defendant to his prejudice. LSA-C.Cr.P. art. 464. The trial court allowed the State to amend its answer to defendants' bill of particulars to show that the correct statute is LSA-R.S. 40:967. Defendants were not misled by the erroneous citation and the fact that they were charged under the wrong statute is not ground for reversal of their convictions. State v. James, 305 So.2d 514 (La., 1974).

*243 ASSIGNMENT OF ERROR NUMBER ONE
Defendants contend that the trial court erred in restricting their inquiry into the reliability of the confidential informant whose information provided the basis for police surveillance, the affidavit and the search warrant. State objections were sustained to various questions about the informant. There were no contemporaneous objections to the rulings, and the alleged errors cannot be raised on appeal. LSA-C. Cr.P. art. 841.[1]
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER TWO
Defendants contend that the trial court erred in not allowing a question about evidence seized relating to other persons arrested at the same time as Johnson and Kelly. There was no contemporaneous objection. LSA-C.Cr.P. art. 841, supra.
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER THREE
Defendants contend that the evidence seized should have been suppressed because the search warrant is defective on its face and does not establish probable cause for the search.
The search warrant initially described the premises as 2705 Belmont Street, apartment D. The D was crossed out and replaced with a handwritten F. The correction was initialled by the magistrate and the two affiants. It is contended that the handwritten F resembles a C and this causes an ambiguous discrepancy which is fatal to the warrant's validity.
F rather than C is the correct letter. Apartments E and F had been under surveillance. A separate warrant had been executed for E. This warrant could not reasonably have authorized the search of any apartment other than F. Officers McNeil and Peralta, who had conducted the surveillance and executed the affidavits, knew that the two apartments to be searched were E and F. They were executing the warrant for apartment E, while other officers were executing the warrant for Apartment F, the only other third floor apartment. There was no danger of the wrong premises being searched and the description is therefore not deficient. State v. Cobbs, 350 So.2d 168 (La., 1977). The alteration did not invalidate the warrant. State v. Welsh, 371 So.2d 1314 (La., 1979).
It is also contended that the affidavit did not establish probable cause for the search. The affidavit recites that a reliable confidential informant had been present in Apartment E, the residence of Sharon Rudolph, and discussed obtaining Dilaudid. Rudolph was given money by the informant, went to apartment F, her sister's residence, returned to apartment E and produced the purchased narcotics. Rudolph advised the informant that she had to conceal the drugs in her sister's residence because the police were watching her. The informant was told drugs could be obtained when Rudolph was not at home directly from her sister in apartment F. Officers McNeil and Peralta undertook surveillance of apartments E and F and observed various people enter and exit the two apartments on Wednesday, August 23. The surveillance was limited and the detectives, according to their testimony on the motion to suppress, could not see the entrance to apartment F. The informant advised by telephone on Thursday, August 24, that he had returned to apartment E but Sharon Rudolph was not at home. The informant knocked on the apartment F door of her *244 sister, Harden Johnson, to secure Dilaudid. Harden asked the confidential informant if he wanted Dilaudid and when he replied affirmatively she fetched the narcotics from the rear of the residence. The two officers undertook another surveillance and again observed people coming and going from the two apartments. They then executed the affidavit.
The reliable informant reported that Dilaudid was available for sale in apartment F on at least two occasions. The second report was on August 24, the same day that the search warrant was obtained. Although the cache of drugs was not observed by the informant, a sufficient amount was available for sale on two occasions. Probable cause was established by the fact that a retail quantity was present on the date of the warrant and on a prior occasion.
It is contended that the affidavit contains misrepresentations which invalidate the warrant. Officer McNeil knew the informant through officer Peralta. McNeil did know that the informant had been used on a prior occasion. However, on that occasion the information was fruitless. It is contended that McNeil could not have sworn that the informant's information had led to arrests and convictions of persons engaged in narcotics traffic. The misrepresentation was not deliberate. Officer Peralta was familiar with the informant's reliability. After excising McNeil's unintentional misrepresentation, Peralta's knowledge was sufficient to establish probable cause. State v. Rey, 351 So.2d 489 (La.,1977).
Objection is made to the surveillance portion of the affidavit, because the entrance of apartment F, was not visible. The officers did see individuals coming and going toward what could only have been apartment F. Moreover, the surveillance portion of the affidavit is unnecessary to establish probable cause. Lack of corroboration for the informant does not invalidate the warrant, when the other details of the affidavit support a reasonable inference of reliability. State v. Paciera, 290 So.2d 681 (La.,1974).
This assignment lacks merit.

ASSIGNMENTS OF ERROR NUMBER FOUR, ELEVEN AND FIFTEEN
These assignments relate only to defendant Johnson. Since her conviction must be reversed on the basis of assignment of error number sixteen, the questions raised are moot.

ASSIGNMENT OF ERROR NUMBER SEVEN
Defendants contend that the trial court should have severed the trials. The trial judge stated in denying the motion to sever that he would grant it during trial if it developed that the two defenses were antagonistic. Johnson did not testify that the drugs were Kelly's and stated that she had never seen him with any drugs. Kelly did not testify or present any evidence that exculpated him and inculpated Johnson. Although alleged to be antagonistic, the two defenses were not. Defendants did not show that justice required a severance and no prejudice appears from the joint trial. LSA-C.Cr.P. art. 704; State v. Bradford, 367 So.2d 745 (La.,1978); State v. McGraw, 366 So.2d 1278 (La.,1978).
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER TEN
It is contended that the trial court erred in allowing officer David Peralta to testify beyond the scope of his expertise. Questions about normal dosage units in illegal sales, the quantity of tablets required to maintain a drug habit and how many pills might be taken in a day by an addict are said to be outside the witness's knowledge. The trial court found the witness to be an expert in the packaging and distribution of controlled dangerous substances. The trial court did not abuse its discretion in allowing the questions. State v. Carter, 347 So.2d 236 (La.,1977).
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER TWELVE
Defendant Johnson contends that a mistrial should have been granted. Kelly's *245 attorney asked whether known drug addicts had been seen entering or leaving Johnson's apartment, and the trial court did not allow an answer to the question.
Kelly contends that this prejudiced his defense, because he could have established that others were responsible for any narcotics found in the residence. It is argued that the evidence was also relevant to the question of whether he had a specific intention to distribute drugs.
Kelly's guilt rested on the fact that he was found with the drugs. Officer Peralta testified that an addict would need at the most approximately two Dilaudids a day and four Preludin. Addicts generally keep only a two or three day supply of drugs. According to Peralta, the amount possessed by Kelly had a street value of between $3,500 and $3,600. An intention to distribute narcotics can be inferred from the quantity in Kelly's possession. See U. S. v. Staten, 581 F.2d 878 (D.C.Cir.1978) and State v. Sibley, 310 So.2d 100 (La.,1975). Compare State v. House, 325 So.2d 222 (La.,1976) and State v. Harveston, 389 So.2d 63 (La.,1980). Any evidence of other narcotics offenders at the residence was immaterial evidence of other offenses, which was properly excluded by the trial judge.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER FOURTEEN
It is contended that the trial court erred in denying a motion for the jury to view the crime scene. A view would allegedly have clarified the evidence about the layout of the two apartments. The matter was within the trial court's discretion. LSA-C.Cr.P. art. 762. There was no abuse of discretion because the evidence about the relative locations of the two apartments and their interior designs was sufficiently clear. State v. Gallow, 338 So.2d 920 (La.,1976).
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER SIXTEEN
Defendant Johnson contends that there was insufficient evidence to find her guilty beyond a reasonable doubt of possession of the drugs. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
The drugs were not in Johnson's possession.[2] She lived in the apartment where Kelly was found with them. The officers at the front door had not knocked or announced their presence. Johnson attempted to exit at that door after hearing a loud noise by police at her sister's back door. It can be inferred that she was fleeing the scene because she was going away from the police noise at the back. Since there was nothing to warn Johnson that the police were also at the front door of her apartment, her encounter with them at that door must be viewed as accidental. The inference that Harden Johnson was aiding Kelly's disposal efforts is unjustified.
Proximity to a drug or association with a possessor may establish a prima facie case of drug possession when colored by other evidence. United States v. Staten, 581 F.2d 878 (D.C.Cir.1978). However, mere association or proximity, without more, is insufficient. Arellanes v. United States, 302 F.2d 603 (9th Cir. 1962); State v. Cann, 319 So.2d 396 (La.,1975). Dominion over the illegal substance must be proven. State v. Walker, 369 So.2d 1345 (La.,1979). Active cooperation in an attempt at drug disposal is adequate other evidence. United States v. Jackson, 423 F.2d 506 (9th Cir. 1970). That factor is not present here. The only color of other evidence is Johnson's attempted exit from the apartment. Flight can show consciousness of guilt. State v. Bolton, 354 So.2d 517 (La.,1978). However, flight alone, particularly that here, where there was no question of hot pursuit, is insufficient. See State v. Alford, 323 So.2d 788 (La.,1975) where evidence of flight was insufficient *246 even though there was hot pursuit.
Kelly was seen with his hand in the commode disposing of the only drugs in the apartment. He had possession of them. The only evidence that Johnson shared that possession is her attempt to leave the scene.
If Harden Johnson knew Kelly possessed the drugs, this would explain her flight but would not suffice to prove constructive possession. The crucial element of control over the illegal substance would be missing. See United States v. DiNovo, 523 F.2d 197 (7th Cir. 1975); United States v. Watkins, 519 F.2d 294 (D.C.Cir.1975); United States v. Bonham, 477 F.2d 1137 (3rd Cir. 1973); and, Montoya v. United States, 402 F.2d 847 (5th Cir. 1968). A rational trier of fact could not have found Harden Johnson guilty beyond a reasonable doubt of possession of Preludin and Dilaudid, and her conviction must be reversed.

ASSIGNMENT OF ERROR NUMBER TWENTY-ONE
Defendants contend that the trial court erred in not calling Barbara Jean Allen to the witness stand in the presence of the jury. Barbara Jean Allen had been examined twice outside the presence of the jury and answered some questions but invoked her Fifth Amendment privilege against self-incrimination as to most inquiries. Her attorney stated that any testimony about the events of August 23 or 24 would be incriminating to the witness and that she invoked the Fifth Amendment in relation to such questions. The questions the witness answered outside the presence of the jury were irrelevant to any issues in the trial.
It is contended that failure to force the witness to invoke her privilege before the jury restricted the defendant's constitutional right to present a defense in violation of the Sixth Amendment to the United States Constitution, and Article 1, Section 16, of the Louisiana Constitution of 1974. It is reversible error to allow a witness to claim a blanket privilege. State v. Wilson, 394 So.2d 254 (La.,1981). However, when it is clear to the trial court that the silence of a witness is justified as to a particular evening because any testimony could be injurious, a question by question asserted of the privilege is unnecessary. State v. Darby, 403 So.2d 44 (La.,1981). It is improper to call a witness to the stand solely to impress upon the jury the fact that the witness will claim the privilege against self-incrimination. State v. Berry, 324 So.2d 822 (La.,1975); State v. Day, 400 So.2d 622 (La.,1981).
Once it was determined that witness Allen would invoke the Fifth Amendment as to all questions relative to August 23 or 24, the trial court did not err in refusing to have her testify before the jury, State v. Darby, supra. The rights of confrontation and cross-examination are guaranteed. Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). However, none of the statements by this witness bore on a fundamental part of the State's case and they would not have bolstered the defense. Douglas, supra. Defendants were not denied testimony which which would have been relevant and material to their defense. Compare Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). It may be trial error, but not necessarily reversible error to require a witness to answer questions in front of the jury which the witness will refuse to answer on the ground of self-incrimination. Namet v. United States, 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963). The better policy is an examination outside the presence of the jury such as that conducted by the trial court here. See United States v. Lacouture, 495 F.2d 1237 (5th Cir. 1974); United States v. Johnson, 488 F.2d 1206 (1st Cir. 1973); and, United States v. Bowman, 636 F.2d 1003 (5th Cir. 1981). The trial court did not err in not requiring the witness to invoke the privilege in front of the jury.
This assignment lacks merit.

*247 ASSIGNMENTS OF ERROR NUMBER NINETEEN AND TWENTY
Defendant Kelly contends that the trial court erred in finding him to be a third offender.[3] LSA-R.S. 15:529.1.
The primary issue is whether defendant Kelly was properly advised of his constitutional rights as required by Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), at the time of his 1972 conviction. As to his privilege against self-incrimination, defendant was told: "When you plead guilty, you lose or give up certain rights.... You lose your right to remain silent because when you plead guilty you're not remaining silent. Do you understand that?" State v. Martin, 382 So.2d 933 (La.,1980) held that similar advice was insufficient since it did not adequately advise the defendant of his right to remain silent at a later trial after his plea.[4] However, Martin dealt with a 1976 conviction. In all recent Louisiana felony cases, the record must affirmatively show that the defendant was adequately advised of the three rights prescribed by Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1971). State v. Williams, 400 So.2d 868 (La.,1981). In the case of pleas entered more than six years ago, the record must show only that the defendant voluntarily pleaded guilty with a full understanding of "the connotation and consequences". State v. Cusher, 400 So.2d 601 (La.,1981); State v. Warren a/k/a Mason, 402 So.2d 662 (La.,1981). Defendant here was adequately advised of his rights. His plea was knowing and voluntary. The trial court did not err in using the 1972 conviction to find defendant Kelly to be a multiple offender.
It is also contended that a 1963 plea was effective because defendant was not accompanied by counsel. State v. Coody, 275 So.2d 773 (La.,1973). The minute entry for that conviction reflects that the Legal Aid Bureau was appointed as counsel for Kelly the day before his guilty plea was entered. Defendant was afforded counsel. He was entitled to waive the presence of that counsel when he entered his guilty plea. Kelly was accompanied by Harry F. Connick, attorney, when he was sentenced in 1963. The 1963 conviction was properly considered to enhance Kelly's sentence.
The testimony of police officer Glen Burmeister, a fingerprint expert, adequately establishes that defendant, James Kelly, is one and the same as the James Kelly previously convicted.
For the foregoing reasons, the convictions of defendant, Harden Johnson, for possession of Preludin and Dilaudid are reversed and vacated. The convictions and sentence of defendant, James Kelly, for possession of Dilaudid and Preludin with intent to distribute those drugs are affirmed.
REVERSED AS TO DEFENDANT HARDEN JOHNSON; AFFIRMED AS TO DEFENDANT JAMES KELLY.
LEMMON, J., dissents and assigns reasons.
LEMMON, Justice, dissenting as to reversal of conviction of Harden Johnson.
I disagree that there was insufficient evidence to prove defendant Johnson's guilt beyond a reasonable doubt.
The evidence raises the inference that Ms. Johnson, after hearing the police knock on the door of the adjoining apartment, either was fleeing the scene or delaying the police while Kelly flushed the drugs down the toilet. Either possibility points unmistakenly to Ms. Johnson's guilty knowledge of the presence of drugs in her own apartment.
Under the circumstances shown by the evidence and the inferences reasonably drawn therefrom, a rational trier of fact could conclude beyond a reasonable doubt that Ms. Johnson actively participated in *248 Kelly's possession of the drugs. I would affirm the conviction based on the responsive verdict of guilty of possession.[1]
NOTES
[*] Judges Frederick Stephen Ellis, Morris A. Lottinger, Jr. and Elven E. Ponder of the Court of Appeal, First Circuit participated in this decision as Associate Justices Ad Hoc joined by Justices Calogero, Dennis, Watson, and Lemmon.
[1] LSA-C.Cr.P. art. 841 provides:

"An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.
"The requirement of an objection shall not apply to the court's ruling on any written motion."
[2] It should be noted that the information concerning Johnson's sister obtaining drugs from Johnson was contained only in the affidavit and was not evidence presented to the jury.
[3] A 1960 conviction at which Kelly's lawyer was allowed to withdraw as counsel was not considered.
[4] Martin was overruled in State v. Williams, 392 So.2d 448 (La.,1980) which held that a defendant cannot collaterally attack his prior conviction in a trial under LSA-R.S. 14:95.1 for possession of a firearm by a convicted felon.
[1] The jury apparently concluded that the evidence was not sufficient to support the conclusion beyond a reasonable doubt that Ms. Johnson had acted with the specific intent to distribute the drugs.