CHEHARDY, Justice ad hoc.*
Defendant, Oliver Elizey, Jr., was charged by bill of information with the November 9, 1980, armed robbery of James Keller. Trial began on March 5, 1981, and ended with a jury verdict of guilty as charged. On March 23, 1981 the trial court sentenced defendant to a term of ninety-nine (99) years at hard labor. It is from *1205 this conviction and sentence that defendant appeals.
The evidence discloses that the victim of the armed robbery, Keller, during the early morning hours of November 9, 1980, was leaving a restaurant on St. Charles Avenue in New Orleans when a blue compact car pulled up beside him. Two black males, occupants of the car, asked him questions concerning directions. Since he could not clearly hear the questions, Keller moved closer to the car and stooped down to hear what they were saying. As he did so, the passenger reached out and knocked him on the head. Keller fell to the ground and when he awoke he was in the back seat of the blue car. The passenger seat was reclined back on his legs pinning him down. Fearing for his life, the victim began to struggle to free himself. The passenger of the car attempted to strike him again with the pipe that he had, but Keller fought him off as the car turned into Audubon Park. Finally, Keller knocked the pipe out of his assailant’s hands. In order to help his companion, the driver pulled the car over to the side of the road and then produced a switchblade knife from between the two seats. The passenger jumped from the car leaving Keller and the driver to wrestle for control of the switchblade. Keller grabbed for the knife, catching the blade in the palm of his hand and cutting his palm and fingers. Somehow he gained control of the knife and began thrusting it at his attacker, cutting him on the hand and his shoulder. The man kept hitting Keller and regained control of the knife. Then he dragged the victim from the automobile and began stabbing him, once in the chest, and once in the stomach. Both of the men were fighting Keller at that point. Finally, Keller was able to break away and run. His attackers pursued him with one of them shouting, “he cut you, waste him, kill him.” The driver, who Keller later identified as defendant, ran after him, stabbed him in the leg and kicked him as he lay injured on the ground. During this struggle the other man jumped on Keller, took his wallet and ran back to the car. Keller testified there was approximately Ninety-five Dollars ($95.00) in the wallet. Not satisfied with having the money, the driver continued to attack Keller. The struggle continued until Keller remarked “Look, there’s a jogger.” At that point the driver looked up and Keller hit him as hard as he could in the face. The attacker then jumped up, ran to the car and sped away. Keller then walked over to the houses near the park and began ringing doorbells asking for help. Finally, Brian Smith answered Keller’s plea for help and called the police and an ambulance. At that time Keller passed out, coming to after the police and ambulance had arrived. After giving descriptions of his assailants to the police, he was transported by ambulance to Touro Infirmary. Keller had described the tennis shoes of the man who had stabbed and kicked him to a police officer. While he was being examined by a doctor at the hospital, Keller was shown a tennis shoe that exactly matched the description of the shoe worn by his assailant. After Keller identified the shoe, the officers pulled back the curtain which separated Keller’s examination table from the table next to him. Laying on that table was the driver of the car, Keller’s vicious assailant.
Officer Keith McElrath of the New Orleans Police Department, testified that as he and his partner, Philip Pizzo, were interviewing the victim, they realized that a man who was also being treated for stab wounds matched the victim’s description of his assailant. The man had the same clothing and the same wounds that the victim had described. After the defendant was identified by the victim he was placed under arrest.
By assignment of Error No. 1 defendant contends the trial court erred in refusing to allow defense counsel an opportunity to lay a proper foundation regarding the victim’s use of narcotics. James Keller admitted that he had been drinking on the night of the crime. Defense counsel argues he was attempting to lay a foundation “that a mixture of alcohol and narcotics might tend to dull or even distort the senses thereby making the identification, at the least, uncertain.”
*1206 At trial defense counsel asked the victim, “Do you use any drug other than prescription drugs?” The state objected before the witness could answer and the trial court sustained the objection. The court instructed counsel that, “You can ask if he’s ever been convicted before, and that’s all sir.” The judge obviously construed counsel’s query as an attempt to besmirch the victim’s character with evidence of his involvement in other offenses and hence ruled solely on the basis of La. R.S. 15:495, which provides in pertinent part:
“Evidence of conviction of crime, but not of arrest, indictment or prosecution, is admissible for the purpose of impeaching the credibility of the witness * *
This construction was logical in view of counsel’s reference to drugs “other than prescription drugs.”
In the present case it is a witness, the victim, not the defendant, who was being impeached. The credibility of James Keller was crucial to defendant’s case since Keller’s identification was the basis of the defendant’s conviction. However, when the trial court sustained the state’s objection to counsel’s question, counsel did not object and made no effort to explain the theory of drugged intoxication which he sought to develop.
Article 841 of the Louisiana Code of Criminal Procedure provides in part:
“An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.”
In State v. Alexander, 351 So.2d 505 (La.1977), this Court found defendant’s argument improperly before the court since counsel did not object to the court’s action in sustaining the state’s objection. In State v. Charles, 326 So.2d 335 (La.1976), this Court explained:
“In these assignments defendant contends the trial court erroneously sustained the state’s objections to cross-examination questions asked by defendant’s counsel. On these occasions, although defendant did not expressly object, the court was necessarily aware of the action which defendant desired the court to take, viz., to overrule the state’s objection and allow him to put the questions to the state’s witness. However, defendant’s counsel neither complained of the court’s ruling nor apprised the court of the grounds upon which he was entitled to ask the questions. Instead, he apparently acquiesced in the court’s ruling by proceeding with his cross-examination along a different line of questioning.
“Essentially, Article 841 requires a party to appraise the court of an occurrence that the party contends is an irregularity or error as well as the basis for his contention. Since defendant did not comply with the statute he may not complain after verdict of the occurrences alluded to in these assignments of error. This rule is necessary to promote judicial efficiency by providing an adequate opportunity for the recognition and correction of errors during trial. State v. Marcell, supra. [320 So.2d 195 (La.1975) ].”
See also State v. Johnson, 404 So.2d 239 (La.1981).
Had defendant’s theory of cross-examination manifested itself from the line of questioning involved, counsel’s failure to object may have been excusable. State v. Boutte, 384 So.2d 773 (La.1980). Here, however, counsel’s reference to nonprescription drugs foreshadowed an effort to impeach the witness with evidence of crimes for which there had been no conviction. This line of impeachment was impermissible under La. R.S. 15:495 and counsel’s belated justification of the inquiry comes too late when urged for the first time on appeal. We observe that even if defense counsel had objected to the court’s ruling, the error does not appear to be one that would mandate a reversal. There are no facts to indicate that the victim had taken *1207 any drugs on the night of the offense. The victim admitted drinking and counsel cross-examined him on that issue. The ruling of the court, although an error, did not substantially prejudice the rights of the accused. La.C.Cr.P. art. 92}.
We find no merit in assignment of Error No. 1.
By assignment of Error No. 2 defendant urges that the trial court erred when it sustained the state’s objection to defense counsel’s question concerning whether or not the victim had any black friends. Defendant’s counsel argues he was attempting to establish that “if James Keller was not in the habit of being in the company of blacks, the possibility of positive identification would be remote.”
Defendant may impeach the credibility of a witness so far as his credibility in the case on trial is concerned. La. R.S. 15:490. However, defense counsel did not object to the ruling, thereby failing to leave a record reviewable by this Court. State v. Luckett, 327 So.2d 365 (La.1976, on rehearing); La.C.Cr.P. art. 841.
Even if counsel had timely objected and stated the proper legal basis for this objection, the error complained of would not mandate a reversal. La.C.Cr.P. art. 921. The victim’s description and identification of his assailant were extremely accurate. The defendant was identified within an hour of the offense. Furthermore, the victim asserted at trial that he was positive that defendant was his attacker. We find no merit in this assignment of error.
Defendant submits in his final and third assignment of error that the trial court erred in not setting aside the jury’s verdict since the verdict was contrary to the law and evidence. This contention is based on defendant’s assertion that there was no evidence that anything of value was taken from the victim. Furthermore, defendant contends that numerous inconsistencies existed in the victim’s and the police officers’ testimonies.
The critical inquiry on review of the sufficiency of evidence to support a criminal conviction is to determine whether the record could reasonably support a finding of guilt beyond a reasonable doubt. The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inference from basic facts to ultimate facts. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Moody, 393 So.2d 1212 (La.1981).
A review of the record in light of the aforementioned standard clearly illustrates that a rational trier of fact could have found beyond a reasonable doubt that Oliver Elizey, Jr., committed the armed robbery in question. The victim positively identified Elizey as his attacker. The defendant matched the description that Keller gave to police officers even as to the location of the stab wounds. The victim testified that defendant and the other assailant kept demanding his money and his leather coat. After stabbing, kicking and beating the victim, they were successful in taking his wallet which contained approximately $95.00.
By this evidence the prosecution clearly established that something of value was taken from the victim by force.
Assignment of Error No. 3 lacks merit.
For the foregoing reasons the conviction and sentence of Oliver Elizey, Jr., are affirmed.

 Judges Patrick M. Schott, Lawrence A. Chehar-dy and Denis A. Barry of the Court of Appeal, Fourth Circuit, participated in this decision as Associate Justices ad hoc, joined by Associate Justices Pascal F. Calogero, Jr., James L. Dennis, Jack Crozier Watson and Harry T. Lem-mon.