376 So.2d 92 (1979)
STATE of Louisiana
v.
Gregory P. WALKER.
No. 63975.
Supreme Court of Louisiana.
October 8, 1979.
Rehearings Denied November 1, 1979.
Lyall G. Shiell, Jr., New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise S. Korns, Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
Defendant, Gregory Walker, was charged by grand jury indictment with the July 23, 1977 aggravated rape of a young woman in violation of R.S. 14:42. After trial by jury on January 19, 1978, he was found guilty as charged, and sentenced to serve fifty years at hard labor. Defendant now appeals his conviction and sentence to this court.
The evidence at trial showed the following. In the early morning hours of July 23, 1977, the victim left her roommate in Fat Harry's, a bar on St. Charles Avenue in New Orleans, and walked to her car parked around the corner on a side street. She got in her car, started the motor and turned to lock the door, but defendant forced his way into the car, pressing a screwdriver to the victim's throat. At his direction, the victim drove until she reached the corner of Camp and Delachaise, where defendant ordered her to stop. Defendant then forced her into the back seat and raped her anally. At defendant's direction, the victim drove halfway back to Fat Harry's and the defendant got out of the car. The victim returned to Fat Harry's where she reported the rape to the police.
Identification of defendant by the victim in separate photographic displays, one conducted at Fat Harry's, the other in her home, led to the arrest of defendant on August 12, 1977. Subsequently the victim identified the defendant in a line-up.
The victim's private physician, Dr. Morris, discovered gonorrheal infection in the anal canal shortly after the rape. On August 15, three days after his arrest, defendant sought out medical attention at parish prison complaining of a penile drip. Dr. George T. Linder, medical director at parish prison, treated defendant for gonorrhea. To bolster the victim's identification of defendant, the state called Dr. Linder to testify concerning his diagnosis and treatment *93 of defendant. The trial court permitted Dr. Linder to testify over objection by the defense counsel who asserted the doctor-patient privilege.
Two of defendant's assignments of error challenge the trial judge's ruling that the doctor-patient privilege is applicable only to civil matters.
The court was referring to the provisions of R.S. 13:3734(B) which does establish a privilege which is civil in nature.[1] The court neglected to consider R.S. 15:476, which establishes a doctor-patient privilege in criminal matters.[2] R.S. 15:476 provides:
"No physician is permitted, whether during or after the termination of his employment as such, unless with his patient's express consent, to disclose any communication made to him as such physician by or on behalf of his patient, or the result of any investigation made into the patient's physical or mental condition, or any opinion based upon such investigation, or any information that he may have gotten by reason of his being such physician; provided, that the provisions of this article shall not apply to any physician, who, under the appointment of the court, and not by a selection of the patient, has made investigation into the patient's physical or mental condition; provided, further, that any physician may be cross-examined upon the correctness of any certificate issued by him."[3]
The state presents two arguments to support the admissibility of Dr. Linder's testimony. The first theory is that since defendant pleaded not guilty to the instant crime he impliedly waived his doctor-patient privilege. The state relies on the case of State v. Berry, 324 So.2d 822 (La.1975); there the defendant had pleaded not guilty by reason of insanity, and, in response to his application, a lunacy commission was appointed. The court held that the defendant's tender of the issue of insanity waived his right to claim the doctor-patient privilege with respect to psychiatric examinations of defendant. Additionally, defendant claimed a doctor-patient privilege as to the physical examination made of him by the coroner after his arrest. The court held that "[a]n in-custody physical examination of an accused by a state physician for the limited purpose of making objective findings as to his physical condition is not protected by the doctor-patient privilege." State v. Berry, supra, at 828. But the court based its holding on the fact that defendant Berry did not meet the essential requirement needed to invoke the privilege: that he voluntarily consult the physician for treatment or diagnosis.
In the instant case there was no implied waiver of the privilege. Defendant consulted Dr. Linder for diagnosis and treatment; the examination was not a routine matter related to defendant's condition on arrival at parish prison. Thus, the findings of Dr. Linder are protected by the doctor-patient privilege.
The state's second theory to support the admissibility of Dr. Linder's testimony is based upon R.S. 13:3714, which provides:
"Whenever a certified copy of the chart or record of any hospital in this state, signed by the administrator or the medical records librarian of the hospital in question, is offered in evidence in any court of competent jurisdiction, it shall be received in evidence by such court as *94 prima facie proof of its contents, provided that the party against whom the record is sought to be used may summon and examine those making the original of said record as witnesses under cross-examination."[4]
The state relies on State v. O'Brien, 255 La. 704, 232 So.2d 484 (1970), where the accused, suffering from withdrawal symptoms due to drug addiction, asked to be taken to Charity Hospital following his arrest for possession of morphine. Charity Hospital records were admitted during trial to show his intent to possess narcotics, over the objection that this evidence violated the doctor-patient privilege of R.S. 15:476.[5] The state in the instant case argues that since Dr. Linder's medical records of his diagnosis and treatment of defendant would have been admissible, his in-court testimony is even more admissible. In the present case, however, the state did not attempt to introduce into evidence the medical records of Dr. Linder; nor were they hospital records. Therefore, R.S. 13:3714 and the O'Brien case are inapplicable.
The provisions of R.S. 15:476 are clear and unambiguous: "No physician is permitted. . . to disclose . . ." his patient's diagnosis and treatment without his express consent. The wisdom of the privilege is questionable, but we are not permitted to ignore it.[6]
For the reasons assigned, defendant's conviction and sentence are reversed, and the case is remanded to the district court for a new trial.
SUMMERS, C. J., dissents.
MARCUS, J., dissents and assigns reasons.
BLANCHE, J., dissents for reasons assigned by MARCUS, J.
MARCUS, Justice (dissenting).
I consider that a statute creating the doctor-patient privilege should be strictly construed in that it precludes the introduction of relevant evidence not otherwise constitutionally protected. The fact that defendant sought out medical attention at the parish prison after his arrest and was subsequently treated by the medical doctor of the prison does not constitute an "employment" by the prisoner of the physician so as to trigger the doctor-patient privilege provided in La. R.S. 15:476. In other words, I consider that "employment" constitutes more than simply an in-custody physical examination of an accused by a state physician for the limited purpose of making objective findings as to his physical condition. Accordingly, I respectfully dissent.
NOTES
[1] R.S. 13:3734(B) provides:

"Except as hereinafter provided, in civil cases, proceedings before a medical review panel, pursuant to R.S. 40:1299.47 and in medical and dental arbitration proceedings, pursuant to R.S. 9:4230-4236, and in proceedings and investigation preliminary to all such actions, a patient or his authorized representative, has a privilege to refuse to disclose and to prevent a health care provider from disclosing any communication, wherever made, relating to any fact, statement or opinion which was necessary to enable that health care provider or any other health care provider to diagnose, treat, prescribe or act for the patient."
[2] According to McCormick on Evidence, § 98 at 212 (2d ed., 1972), although not a part of the traditional common law, a doctor-patient privilege has been recognized by approximately three-fourths of the states.
[3] Acts 1928, No. 2, § 1.
[4] Amended by Acts 1977, No. 294, § 1.
[5] The court held that R.S. 15:476, "a general statute," is inapplicable to matters arising under the provisions of R.S. 13:3714, "a special statute." This reasoning is unsound. The purpose of R.S. 13:3714 is to allow medical records to be admitted into evidence as an exception to the hearsay rule. State v. Trahan, 332 So.2d 218 (La.1976). The purpose of R.S. 15:476, the doctor-patient privilege, is to exclude a certain class of information in order to advance an intended social policy. State v. Aucoin, 362 So.2d 503 (La.1978).
[6] The results of Dr. Morris' tests on the victim were available in early August, before defendant's arrest. If the state had, after defendant's arrest, obtained an order requiring him to submit to a court appointed physician for examination (instead of waiting two months), R.S. 15:476, by its specific terms, would have denied the physician-patient privilege, and would have permitted the introduction of the appointed physician's testimony.