383 So.2d 357 (1980)
STATE of Louisiana
v.
Johnny CARTER.
No. 66051.
Supreme Court of Louisiana.
April 7, 1980.
Rehearing Denied May 19, 1980.
*358 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., J. Kevin McNary, Louise S. Korns, Asst. Dist. Attys., for plaintiff-appellee.
William J. O'Hara, Supervising Atty., New Orleans, Richard Collar, Michael Gallagher, Student Practitioners, Loyola Law School Clinic, Orleans Indigent Defender Program, Robert Barnard, Clyde D. Merritt, New Orleans, for defendant-appellant.
WATSON, Justice.[*]
Defendant Johnny Carter was charged by bill of information with armed robbery in violation of LSA-R.S. 14:64. After the trial court allowed into evidence an inculpatory statement made by defendant to a physician, defendant changed his plea from not guilty to guilty. He was sentenced as a habitual offender to thirty-three years imprisonment at hard labor without benefit of probation, suspension or parole. LSA-R.S. 15:529.1. Defendant reserved the right to appeal from the adverse ruling on the inculpatory statement. State v. Crosby, 338 So.2d 584 (La., 1976). The issue on appeal is whether the statement was a privileged communication to Carter's physician.
Upon returning home from work in the late evening hours of January 19, 1979, Margaret Adams was approached by a man with a gun as she was getting out of her car. He pointed it at her and demanded her purse. After removing six dollars from her purse, the assailant insisted that she give him the keys to the car. Ms. Adams dropped the keys behind the front seat. When the man stooped to look for them, the woman picked up her gun and fired in his direction. The man ran down the street, followed by his intended victim, who fired several more shots until he disappeared from view.
The police were notified of the incident. Investigating officers followed a trail of blood to a point on Washington Street beside an apartment building.
Because the perpetrator of the crime had been shot, Officers Marziale and Palermo investigated a report that a man with a gunshot wound had been admitted to Charity Hospital. At the hospital, they found defendant Carter, who had been shot in the face and buttocks. When Officer Marziale discovered that Carter's apartment was located fifty feet from the point where the blood was found, he placed defendant under arrest. Carter was advised of his rights and refused to sign a waiver or give a statement. Margaret Adams made a positive identification of Carter as the thief.
Dr. Wayne Soignier, a resident surgeon, was on emergency room duty at the Charity Hospital Clinic that night. After Carter was arrested and read his Miranda warnings, Dr. Soignier approached him and began an examination. The two arresting officers stepped a few feet away. When Dr. Soignier asked defendant how he had received his gunshot wounds, defendant stated that he had "... attempted to rob a lady and she pulled a gun out of her *359 pocket and shot him." (Tr., p. 13, 5/3/79). According to Dr. Soignier, defendant told the same story to several different people. Defendant was asked to repeat his answer to determine his rationality.
The only assignment of error is the ruling that the statement to Dr. Soignier was admissible. Defendant asserts that the statement, which was made for purposes of medical treatment, should have been excluded under the doctor-patient privilege provided in LSA-R.S. 15:476.[1]
Three arguments are asserted by the State in support of the admissibility of the statement. The State first contends that the trial court correctly found that examination of the defendant by a state physician, while defendant was in custody, places the statement within the rule enunciated in State v. Berry, 324 So.2d 822 (La. 1976). In Berry the testimony of the coroner who had examined the defendant shortly after his arrest was admitted over defense objection. Emphasizing that the defendant had not consulted the coroner for treatment, the court held the doctor-patient privilege did not extend to testimony of the results of an "in-custody physical examination of an accused by a state physician for the limited purpose of making objective findings as to his physical condition." Id., at 828.
The first requirement for the privilege to attach is that the patient must have consulted the physician for treatment or for diagnosis looking toward treatment. State v. Berry, supra. Defendant entered Charity Hospital voluntarily for the express purpose of obtaining treatment for a gunshot wound. In this respect, defendant consulted a physician through the hospital's services. As the physician on duty, Dr. Soignier provided the treatment as a member of the staff. His status as a resident surgeon in a state-owned hospital is immaterial under these circumstances.
Even though defendant was under arrest when he was examined by Dr. Soignier, this fact does not create the type of in-custody examination contemplated in Berry. The examination in Berry was conducted for the purpose of determining the defendant's health prior to incarceration. Here the examination was not made incident to defendant's arrest but was intended to provide medical treatment. In addition, the statement that was elicited differs from objective findings regarding the defendant's physical condition, thus removing this situation from that faced in Berry.
The second prerequisite to attachment of the doctor-patient privilege is found in the requirement that the patient's communication has been made in confidence to his physician. McCormick on Evidence, Section 101 (2d ed. 1972). The State argues that defendant did not intend to keep his statement confidential, because it was made in a crowded hospital corridor in the presence of two police officers. However, the testimony clearly shows that the two officers, who had stepped a few feet away, were not actually present when the statement was made. One officer testified that he could not recall hearing the statement; the other did not even see Dr. Soignier. A finding of intended confidentiality is further supported by the fact that the defendant refused to give a statement to the police immediately before speaking to the doctor.
Finally, the State argues that the statement is nevertheless admissible under the statutory exception to the hearsay rule provided for hospital records, under LSA-R.S. *360 13:3714.[2] At the pretrial hearing to determine the applicability of the privilege, Dr. Soignier testified that he had recorded defendant's statement in his medical history. After first testifying to his own knowledge of the statement, he read the statement from his notes in the hospital records. These records were marked but were not introduced at the hearing.
The statutory doctor-patient privilege has been held inapplicable to matters arising under the statutory hearsay exception provided in LSA-R.S. 13:3714. State v. O'Brien, 255 La. 704, 232 So.2d 484 (1970). In O'Brien the State introduced Charity Hospital records describing defendant's illness as withdrawal symptoms and classifying him as a drug addict in order to show that the defendant had possessed morphine for an illegal purpose. In rejecting defendant's assertion of the doctor-patient privilege, the court found the records were admissible under the statutory exception to the hearsay rule.
The State's claim that the statement would be admissible under the O'Brien rationale is not well-founded, as the medical records were not introduced by the State. Defendant asserted the privilege with regard to the doctor's testimony of the content of the statement. In establishing the privilege, the statute in question clearly prohibits disclosure of "any communication" made to the physician by his patient. LSA-R.S. 15:476. The medical records exception to the hearsay rule does not contemplate avoidance of the privilege by including confidential privileged communications in otherwise admissible records. The hearsay exception only applies to non-privileged matters. See Pugh, Doctor-Patient Privilege: Hospital Records, 31 La.L.Rev. 383 (1971).
Since the doctor-patient privilege clearly attached when defendant made this confidential communication to his doctor, the trial court erred in ruling that the doctor's testimony about the statement was admissible.
For the reasons assigned, the guilty plea is set aside, the sentence is reversed, and the case is remanded for a new trial in accordance with the views expressed in this opinion.
PLEA VACATED; REVERSED AND REMANDED.
BLANCHE, J., dissents.
MARCUS, J., dissents and assigns reasons.
MARCUS, Justice (dissenting).
I consider that a statute creating the doctor-patient privilege should be strictly construed in that it precludes the introduction of relevant evidence not otherwise constitutionally protected. Under the circumstances of the instant case, I do not consider that defendant intended to keep his statement confidential. Accordingly, I respectfully dissent.
NOTES
[*] Honorable EDWARD A. de la HOUSSAYE, III participated in this decision as Associate Justice ad hoc.
[1] LSA-R.S. 15:476 provides:

"No physician is permitted, whether during or after the termination of his employment as such, unless with his patient's express consent, to disclose any communication made to him as such physician by or on behalf of his patient, or the result of any investigation made into the patient's physical or mental condition, or any opinion based upon such investigation, or any information that he may have gotten by reason of his being such physician; provided, that the provisions of this article shall not apply to any physician, who, under the appointment of the court, and not by a selection of the patient, has made investigation into the patient's physical or mental condition; provided, further, that any physician may be cross-examined upon the correctness of any certificate issued by him."
[2] LSA-R.S. 13:3714 provides:

"Whenever a certified copy of the chart or record of any hospital in this state, signed by the administrator or the medical records librarian of the hospital in question, is offered in evidence in any court of competent jurisdiction, it shall be received in evidence by such court as prima facie proof of its contents, provided that the party against whom the record is sought to be used may summon and examine those making the original of said record as witnesses under cross-examination."