522 So.2d 600 (1988)
STATE of Louisiana
v.
Ronald BERLUCHAUX.
No. KA 87 0991.
Court of Appeal of Louisiana, First Circuit.
February 23, 1988.
Rehearing Denied April 5, 1988.
*601 Bryan Bush, Dist. Atty. Office of the Dist. Atty. by Jesse Bankston, Asst. Dist. Atty., Baton Rouge, La., for plaintiff/appellee.
Stephen Covert, Baton Rouge, for defendant/appellant.
Before SHORTESS, LANIER and CRAIN, JJ.
LANIER, Judge.
Ronald Berluchaux was charged by amended bill of information with operating a vehicle while intoxicated, fourth offense, in violation of La.R.S. 14:98. He withdrew his original plea of not guilty and pled guilty after his motion to suppress a blood alcohol test result was denied. He conditioned his guilty plea pursuant to State v. Crosby, 338 So.2d 584 (La.1976), by reserving his right to appeal the denial of the motion to suppress. The trial court sentenced defendant to a ten year term of imprisonment at hard labor. Execution of the sentence was suspended, and the defendant was placed on supervised probation for five years with special conditions.[1]

FACTS
During the night of April 11, 1986, defendant was involved in a very serious vehicular accident on Louisiana Highway 30 in East Baton Rouge Parish. A vehicle operated by the defendant and a tank truck collided head-on when defendant's vehicle traveled into the truck's lane of traffic. The defendant and the truck driver were seriously injured. In addition, hazardous cargo carried by the truck was spilled onto the highway, requiring an expensive cleanup operation.
Defendant was transported by ambulance to our Lady of the Lake Regional Medical Center (Hospital) where he personally sought medical treatment for his injuries. The record does not reflect that the defendant was accompanied by law enforcement officers or was under arrest while at the Hospital. In the course of preoperative preparation, the emergency room physician ordered a blood alcohol test. The blood sample was drawn, and the test was conducted by hospital personnel at the request of the treating physician.[2]
The state concedes that the blood test was not "administered at the direction of a law enforcement officer" or "according to methods approved by the Department of Public Safety and by an individual possessing a valid permit issued by said department for this purpose" pursuant to La.R.S. 32:661 et seq.
Subsequent to defendant's arraignment, the state issued a subpoena duces tecum to *602 the Hospital for production of "all records on treatment of Ronald H. Berluchaux, wm, DOB 12/30/57, on April 11, 1986, including, but not limited to, results of any blood testing." The defendant then filed motions to suppress the subpoena duces tecum and the hospital records containing the results of the blood alcohol test. Both motions were consolidated for hearing. After hearing the evidence and arguments of counsel, the trial judge denied both motions with the following rationale:
Addressing the motion to quash the subpoena first, I do agree with what Mr. Bankston says. I do not feel that the case of State versus Carter is controlling. For the record, that case is found at 383 So.2nd, 357, decided by the Louisiana Supreme Court in 1980. That case appears to deal solely with oral communications between the doctor and his patient. And I do not feel that the documents sought to be quashed in this case fall within that type of evidence. Looking at the cases submitted by Mr. Bankston in support of the introduction and use of the medical records, I do feel that the case of State versus Bruins, 315 So.2nd, 293, 1975, and, also, the case of State versus O'Brien, [255 La. 704] 232 So.2nd, 484, 1970, would be controlling. Therefore, the motion to quash the subpoena duces tecum in this case is denied and overruled.
Insofar as the motion to suppress the physical evidence, that is, the blood test itself, for use as evidence at the trial, it is the ruling of this Court that this blood test, if the proper foundation is laid, chain of custody, and what-have-you, the blood test will be allowed to be used by the State. So I'm overruling the motion to suppress. However, I'm not allowing the blood test to show, or for use of the presumption set up by Title 32. Because it's obvious, from the record and the evidence, that those guidelines set up by Title 32, and the rules and regulations of the Department of Public Safety were not complied with. So insofar as the legal presumption, and the presumptive rule applicable to blood tests, that will not be allowed in this case. The blood test will not be allowed to be used for that purpose. But the Court will allow it, assuming the proper foundation is laid, will allow the test to be used in conformity with the case of State versus O'Brien, 232 So.2nd, 484, Louisiana Supreme Court, 1970. If the State can present expert testimony to show it's [sic] relevance and basis of it's [sic] admissiblity. So, essentially, the motion to suppress is overruled.

APPLICABILITY OF PHYSICIAN-PATIENT PRIVILEGE TO MOTIONS TO QUASH AND SUPPRESS

(Assignment of Error No. 1)
Defendant contends the trial court "erred in failing to quash the subpoena and suppress for use as evidence the personal medical records of the defendant." Defendant's main argument in support of these motions is that all of the hospital records, especially the results of the blood test, are privileged according to La.R.S. 15:476, which provides as follows:
No physician is permitted, whether during or after the termination of his employment as such, unless with his patient's express consent, to disclose any communication made to him as such physician by or on behalf of his patient, or the result of any investigation made into the patient's physical or mental condition, or any opinion based upon such investigation, or any information that he may have gotten by reason of his being such physician; provided, that the provisions of this article shall not apply to any physician, who, under the appointment of the court, and not by a selection of the patient, has made investigation into the patient's physical or mental condition; provided, further, that any physician may be cross-examined upon the correctness of any certificate issued by him. [Emphasis added.]
The defendant cites State v. Carter, 383 So.2d 357 (La.1980) as authority.
The state argues that the record of the blood test results is admissible based upon La.R.S. 13:3714, which reads as follows:

*603 Whenever a certified copy of the chart or record of any hospital, signed by the administrator or the medical records librarian of the hospital in question, is offered in evidence in any court of competent jurisdiction, it shall be received in evidence by such court as prima facie proof of its contents, provided that the party against whom the record is sought to be used may summon and examine those making the original of said record as witnesses under cross-examination.
The state asserts the statutory doctor-patient privilege has been held inapplicable to matters arising under the statutory exception provided for in La.R.S. 13:3714, citing State v. O'Brien, 255 La. 704, 232 So.2d 484 (1970).
In O'Brien, 232 So.2d at 488-489, appears the following:
And Bill No. 10 was taken when the State, in connection with this testimony, introduced in evidence as an exhibit, a Charity Hospital Route Sheet diagnosing appellant's illness as withdrawal symptoms and classifying him as a dilaudid addict, together with a letter from the Director of the Hospital to the Criminal District Court, stating that appellant was brought to the hospital in a car by a detective on May 18 and that his illness was diagnosed as dilaudid addiction.
. . . .
And counsel further asserts in brief that the Charity Hospital record is hearsay, violates his constitutional right of confrontation and also the physician-patient privilege provided by R.S. 15:476.

. . . .
The Charity Hospital Route Sheet and the letter of the Director establishing its authenticity were likewise admissible in evidence for corroboration of Officer Lauman's testimony and, independently, as tending to show that appellant knowingly possessed the morphine seized in the Quince Street raid for an illegal purpose, i.e., use as a drug addict. These records are prima facie proof of the facts and findings stated therein and were admissible under R.S. 13:3714 providing that:
"Whenever a certified copy of the chart or record of any hospital in this state, signed by the director, assistant director, superintendent or secretary-treasurer of the board of administrators of the hospital in question, is offered in evidence in any court of competent jurisdiction, it shall be received in evidence by such court as prima facie proof of its contents, provided that the party against whom the record is sought to be used may summon and examine those making the original of said record as witnesses under cross-examination."
The above-quoted statute supplies a complete answer to counsel's claim that the admission of the hospital record was in violation of the physician-patient privilege provided by R.S. 15:476, for that general statute is inapplicable to matters arising under the provisions of this special law, which was enacted in 1938, amended in 1952 by Act 519 and again amended and broadened in its scope by Act 161 of 1966.
Moreover, in view of the statute which sanctions the introduction of charts or records of all hospitals in this State, when properly certified and otherwise relevant to the proceeding, "* * * in any court of competent jurisdiction * * *" defense counsel's assertion in brief and argument here, that the records are hearsay and denied appellant his constitutional right to confrontation of the witnesses against him, is not well founded. [Footnote omitted.] [Emphasis added.]
O'Brien was unfavorably reviewed in Pugh, Work of Appellate Courts1969-1970Evidence, 31 La.L.Rev. 381, 383 (1971).
In State v. Walker, 376 So.2d 92 (La. 1979), a rape victim developed a venereal disease after the crime was committed. After his arrest, the defendant sought treatment in jail for the same type venereal disease that the victim developed. The trial court over defense objection permitted the jail physician to testify about his diagnosis and treatment of the defendant. At *604 Walker, 376 So.2d 93-94, the court reversed the trial court with the following rationale:
The state's second theory to support the admissibility of Dr. Linder's testimony is based upon R.S. 13:3714, which provides:
"Whenever a certified copy of the chart or record of any hospital in this state, signed by the administrator or the medical records librarian of the hospital in question, is offered in evidence in any court of competent jurisdiction, it shall be received in evidence by such court as prima facie proof of its contents, provided that the party against whom the record is sought to be used may summon and examine those making the original of said record as witnesses under cross-examination."
The state relies on State v. O'Brien, 255 La. 704, 232 So.2d 484 (1970), where the accused, suffering from withdrawal symptoms due to drug addiction, asked to be taken to Charity Hospital following his arrest for possession of morphine. Charity Hospital records were admitted during trial to show his intent to possess narcotics, over the objection that this evidence violated the doctor-patient privilege of R.S. 15:476.5 The state in the instant case argues that since Dr. Linder's medical records of his diagnosis and treatment of defendant would have been admissible, his in-court testimony is even more admissible. In the present case, however, the state did not attempt to introduce into evidence the medical records of Dr. Linder; nor were they hospital records. Therefore. R.S. 13:3714 and the O'Brien case are inapplicable.
The provisions of R.S. 15:476 are clear and unambiguous: "No physician is permitted... to disclose ..." his patient's diagnosis and treatment without his express consent. The wisdom of the privilege is questionable, but we are not permitted to ignore it.
5 The court held that R.S. 15:476, "a general statute," is inapplicable to matters arising under the provisions of R.S. 13:3714, "a special statute." This reasoning is unsound. The purpose of R.S. 13:3714 is to allow medical records to be admitted into evidence as an exception to the hearsay rule. State v. Trahan, 332 So.2d 218 (La.1976). The purpose of R.S. 15:476, the doctor-patient privilege, is to exclude a certain class of information in order to advance an intended social policy. State v. Aucoin, 362 So.2d 503 (La. 1978).
[Underscoring added.]
Although Walker criticized the O'Brien rationale, it does not overrule O'Brien.
In Carter, the victim of an armed robbery shot the robber. Police officers, investigating the case, were advised that Carter was at the Charity Hospital seeking treatment for gunshot wounds. The police officers went to the hospital and subsequently arrested Carter. After the arrest, a resident surgeon on emergency room duty approached Carter and began an examination. The police officers stepped a few feet away. The doctor asked Carter how he received the wounds, and Carter told him that he attempted to rob a lady and she pulled a gun and shot him. In Carter, 383 So.2d at 359-360, appears the following:
Finally, the State argues that the statement is nevertheless admissible under the statutory exception to the hearsay rule provided for hospital records, under LSA-R.S. 13:3714. At the pretrial hearing to determine the applicability of the privilege, Dr. Soignier testified that he had recorded defendant's statement in his medical history. After first testifying to his own knowledge of the statement, he read the statement from his notes in the hospital records. These records were marked but were not introduced at the hearing.
The statutory doctor-patient privilege has been held inapplicable to matters arising under the statutory hearsay exception provided in LSA-R.S. 13:3714. State v. O'Brien, 255 La. 704, 232 So.2d 484 (1970). In O'Brien the State introduced Charity Hospital records describing defendant's illness as withdrawal symptoms and classifying him as a drug addict in order to show that the defendant had possessed morphine for an illegal purpose. In rejecting defendant's assertion of the doctor-patient privilege, the *605 court found the records were admissible under the statutory exception to the hearsay rule.
The State's claim that the statement would be admissible under the O'Brien rationale is not well-founded, as the medical records were not introduced by the State. Defendant asserted the privilege with regard to the doctor's testimony of the content of the statement. In establishing the privilege, the statute in question clearly prohibits disclosure of "any communication" made to the physician by his patient. LSA-R.S. 15:476. The medical records exception to the hearsay rule does not contemplate avoidance of the privilege by including confidential privileged communications in otherwise admissible records. The hearsay exception only applies to non-privileged matters. See Pugh, Doctor-Patient Privilege: Hospital Records, 31 La.L. Rev. 383 (1971).
Since the doctor-patient privilege clearly attached when defendant made this confidential communication to his doctor, the trial court erred in ruling that the doctor's testimony about the statement was admissible. [Footnote omitted.] [Underscoring added.]
Carter was favorably reviewed in Pugh and McClelland, Developments in the Law, 1979-1980, Evidence, 41 La.L.Rev. 595, 610 (1981).
In Carter, as in Walker, the court did not overrule O'Brien. In both cases, the court distinguished the O'Brien case by observing that no hospital records were involved. The instant case involves only hospital records (and not the testimony of a treating physician as in Walker and Carter,). Thus, we agree with the trial court judge that O'Brien is controlling.[3]
This assignment of error is without merit.

ADMISSIBILITY AND WEIGHT OF EVIDENCE OF INTOXICATION WHICH WAS NOT OBTAINED IN ACCORDANCE WITH LA.R.S. 32:661 ET SEQ.
Defendant contends the trial court "erred since although it prohibited the State from using the blood alcohol test for purposes to show that he registered above 0.10, the presumptive level of intoxication, it allowed the State to use the results of that blood test to prove 14:98(A)(1), the operator is under the influence of alcoholic beverages."
La.R.S. 32:662(A)(1)(c) creates a legal (rebuttable) presumption that a person is under the influence of alcoholic beverages if his blood alcohol concentration is 0.10 percent or more. La.R.S. 15:432; State v. Williams, 354 So.2d 152 (La.1977). To get the benefit of this presumption, the state must comply with all of the requirements of La.R.S. 32:661 et seq. State v. Rowell, 517 So.2d 799 (La.1988).[4] The state has stipulated that La.R.S. 32:661 et seq. has not been followed in this case and that it is not entitled to the benefit of the La.R.S. 32:662 presumption.
A presumption functions as an inference of fact and as a rule of evidence that shifts the burden of producing evidence. Comment, Presumptions in the Criminal Law of Louisiana, 52 Tul.L.Rev. 793 (1978); E. Cleary, McCormick's Handbook of the Law of Evidence, §§ 342-343, pp. 802-811 (2nd ed. 1972). The existence *606 or nonexistence of a presumption does not affect the admissibility of evidence. The admissibility of evidence and the existence of a presumption are separate issues.
La.R.S. 32:662(C) provides as follows:
The foregoing provisions of this section shall not be construed as limiting the introduction of any other competent evidence bearing upon the question whether the person was under the influence of alcoholic beverages.
Thus, although the presumption of La.R.S. 32:662 is not available to the state, a conviction can still be obtained with any other competent evidence of intoxication. State v. Bruins, 315 So.2d 293 (La.1975), (Sanders, C.J., concurring). The admissibility of the Hospital's records, which show the defendant's blood alcohol concentration, is controlled by La.R.S. 13:3714; if the records are properly certified "it shall be received in evidence ... as prima facie proof of its contents." State v. Stevenson, 447 So.2d 1125 (La.App. 1st Cir.1984). Although the evidence is admissible, the trial court still must determine how much weight to give to it. See, for example, Parker v. Kroger's, Inc., 394 So.2d 1178 (La.1981); Brown v. Collins, 223 So.2d 453 (La.App. 3rd Cir.1969). The defendant may attack the accuracy and validity of the hospital record by summoning and cross-examining those who made it. La.R.S. 13:3714.[5]
The defendant's argument that the Hospital's record is rendered inadmissible because the blood alcohol concentration of the defendant was not determined pursuant to La.R.S. 32:661 et seq. is without merit.

DECREE
For the foregoing reasons, the conviction and sentence are affirmed.
AFFIRMED.
SHORTESS, J., concurs because I am compelled to follow the holding in State v. O'Brien.
CRAIN, J., concurs because there is no communication between the Doctor and patient contained in the record. I believe that to be the real holding of O'Brien.
NOTES
[1] These conditions are essentially as follows: (1) defendant must not be involved in any criminal activities or convicted of any criminal offenses; (2) defendant must not operate a motor vehicle for one year; (3) defendant must not operate a motor vehicle without a minimum liability coverage of fifty thousand dollars after his driving privileges are restored; (4) defendant must attend and complete the driver improvement program; (5) defendant must perform two hundred fifty hours of community service; (6) defendant must continue his after care program with East Jefferson General Hospital; (7) defendant must pay one thousand dollars to the criminal court fund; (8) defendant must serve six months at the Community Transition Center; and (9) defendant must pay a twenty dollar per month supervision fee to the Office of Probation and Parole.
[2] The test revealed defendant's blood alcohol level to be 262 milligrams per deciliter, or .262 grams per 100 cubic centimeters.
[3] One of the four conditions necessary for the establishment of a privilege against disclosure is that the injury to the protected relationship (doctor-patient) which would result from disclosure of the privileged communication must be greater than the benefit gained by giving the trier of fact access to the truth. State v. Aucoin, 362 So.2d 503 (La.1978). At least one jurisdiction has held that the public interest in prosecuting those who endanger the highways for all travelers by driving while intoxicated is substantially greater than a patient's interest in having his confidential communication protected from disclosure. State v. TV, 17 Ohio App.3d 159, 478 N.E.2d 830 (1984); State v. Dress, 10 Ohio App.3d 258, 461 N.E.2d 1312 (1982). Recent extensive legislation in Louisiana, proscribing offenses involving driving vehicles while intoxicated, demonstrates a strong public policy in the area. See Comment, The Louisiana DWI Laws in 1984: Where Do The Defendants Stand? (If They Can ...), 30 Loy.L.Rev. 361 (1984).
[4] However, in State v. McGuire, 493 So.2d 559 (La.1986), it was indicated that a La.R.S. 32:661 et seq. test may not be rendered inadmissible where advisement procedures are not adequate.
[5] The defendant is charged with violating La.R. S. 14:98 by operating a motor vehicle while under the influence of alcoholic beverages, La. R.S. 14:98(A)(1), and by operating a motor vehicle with a blood alcohol concentration of 0.10 percent or more by weight based on grams of alcohol per one hundred cubic centimeters of blood, La.R.S. 14:98(A)(2). La.R.S. 32:662(A)(1)(c) provides that, if the blood alcohol concentration is 0.10 percent or more, "it shall be presumed that the person was under the influence of alcoholic beverages." (Emphasis added.) This presumption is irrelevant to DWI as charged under La.R.S. 14:98(A)(2) because proof of 0.10 percent or more is proof of the essential element of the offense.