HIGHTOWER, Judge,
dissenting.
I respectfully dissent.
LSA-R.S. 14:32.1 provides, in pertinent part, as follows:
A. Vehicular homicide is the killing of a human being caused proximately or caused directly by an offender engaged in the operation of, or in actual physical control of, any motor vehicle, aircraft, vessel, or other means of conveyance whether or not the offender had the intent to cause death or great bodily harm whenever any of the following conditions exists:
(1) The offender is under the influence of alcoholic beverages as determined by chemical tests administered under the provisions of R.S. 32:662.
(2) The offender’s blood alcohol concentration is 0.10 percent or more by weight based upon grams of alcohol per one hundred cubic centimeters of blood.
R.S. 32:662, mentioned in Subsection 1 above, provides that when chemical tests for suspected intoxication are conducted in accordance with the provisions of R.S. 32:662, et seq., certain statutory presumptions arise, e.g., “[i]f there was ... 0.10 percent or more by weight of alcohol in the person’s blood, it shall be presumed that the person was under the influence of alcoholic beverages.” Subsection 2 above, however, makes no mention of “intoxication,” R.S. 32:662 or any other Title 32 provisions.
Thus, an evaluation of the two separate sections of R.S. 14:32.1 reveals that, if all other requisite elements of vehicular homicide are proven, one may be convicted either when the presumption of intoxication is properly established under R.S. 32:662, or when the fact of a blood alcohol concentration of at least 0.10 percent is proven.
The majority correctly states that LSA-R.S. 32:663 prohibits the state’s use of the presumption of intoxication unless the tests utilized in determining blood alcohol content are performed pursuant to regulations which are promulgated by the Department of Public Safety. Likewise, in State v. Rowell, 517 So.2d 799 (La.1988), the Louisi *702 ana Supreme Court found the then existing regulations insufficient to insure reliability.
In Rowell, which concerned a DWI prosecution, the court was confronted, however, with a situation involving the employment of blood test results to establish the presumption. The court clearly addressed only that scenario, stating:
In order for the state to avail itself of the statutory presumption of the defendant’s intoxication arising from a chemical analysis of his blood under La. R.S. 32:662, it must show that the state has promulgated detailed procedures which will insure the integrity and reliability of the chemical test, including provisions for repair, maintenance, inspection, cleaning, certification, and chemical accuracy.
517 So.2d 799, 800 (emphasis added).
In State v. Tanner, 457 So.2d 1172 (La.1984), the Supreme Court held that the results of a breath analysis test were inadmissible in a negligent homicide prosecution because the state failed to prove maintenance regulations were sufficient to insure test accuracy. As in Rowell, supra, the court said:
In a criminal prosecution, before the state may avail itself of the statutory presumption of defendant’s intoxication, arising from chemical analysis of his blood, without violation of his constitutional due process guarantee of a fair trial, it must show that the state has promulgated detailed procedures which will insure the integrity and reliability of the chemical test....
457 So.2d 1172, 1175 (emphasis added).
The limited scope of Rowell, supra, in excluding test results only when the state seeks to “avail itself” of the statutory presumption, is illustrated in State v. Berluchaux, 522 So.2d 600 (La.App. 1st Cir.1988), writ. denied, 531 So.2d 467 (La.1988). There, the defendant was charged with DWI, fourth offense. Blood test results were introduced at trial despite the state’s acknowledgment that sufficient requirements insuring reliability had not been fulfilled and that under Rowell, supra, it was not entitled to the benefit of the statutory presumption. The First Circuit held that the test results had been properly admitted, explaining that the presumption and admissibility were two distinct issues. While the state could not avail itself of the presumption, the blood analysis was appropriately used by the state to prove another basis of DWI, i.e., the “operator’s blood alcohol concentration is 0.10 percent or more by weight based on grams of alcohol per 100 cubic centimeters of blood.” See LSA-R.S. 14:98 A(2). Once admitted, the trier of fact had to ascertain the amount of weight to accord the test results in deciding whether the state had proven that element of the crime.
Similarly, in the case at bar, the state clearly could not avail itself of the statutory presumption under Title 32. Accordingly, a conviction predicated on LSA-R.S. 14:32.1 A(l) would not stand. However, the record establishes that the conviction here was not sought, and did not arise, under that provision.
At the beginning of the trial, following a bench conference requested by the state, the trial judge read the vehicular homicide statute to the jury, mentioning only Subsection 2. Likewise, in his charge to the jury, the judge only instructed the panel concerning subsection 2. He did not mention the statutory presumption in any manner. Finally, neither the state’s opening nor closing argument contained any reference to the presumption.
Rather than rely on the statutory presumption of intoxication (R.S. 14:32.1 A, Subsection 1), the state sought to prove the fact of defendant’s blood alcohol concentration at 0.10 percent or more (R.S. 14:32.1 A, Subsection 2). Aided by no presumption, that fact had to be established beyond a reasonable doubt, just as all other elements of the crime. As in Berluchaux, supra, the blood test results were admissible for that purpose, and defendant was afforded the opportunity to impugn their reliability and diminish the weight to be accorded them through cross-examination and through his own case.
Finally, even if the test results established, to the jury’s satisfaction, an illegally *703 elevated blood alcohol concentration, defendant’s guilt of vehicular homicide did not conclusively arise. The state also was required to prove all of the following: 1) the killing of a human being; 2) caused directly or proximately by; 3) defendant’s operation of a motor vehicle while the concentration existed.
The majority correctly states that Tanner, supra; Rowell, supra; and State v. Hill, 531 So.2d 463 (La.1988), hold that the erroneous introduction of chemical test results is so prejudicial that a conviction cannot stand even if there is other evidence of intoxication. In the case sub judice, however, we are not concerned with proof of intoxication, presumed or otherwise. Rather, as previously emphasized, we are concerned with use of test results to prove simply, as a single element, that defendant’s blood alcohol concentration was at least 0.10 percent, as set out in LSA-R.S. 14:32.1 A(2).
For the foregoing reasons, I do not view the denial of defendant’s motion to suppress as grounds for reversal.