553 So.2d 456 (1989)
STATE of Louisiana
v.
Tad W. McELROY.
No. 89-KK-0750.
Supreme Court of Louisiana.
December 11, 1989.
*457 William J. Guste, Jr., Atty. Gen., Richard Ieyoub, Dist. Atty., Beth Conrad and Andrew Casanave, Asst. Dist. Attys., for applicant.
Charlotte Bushnell, Public Defenders Office, for respondent.

ON REHEARING
CALOGERO, Justice.
After conviction and sentencing for operating a motor vehicle while under the influence of alcohol in violation of La. R.S. 14:98, defendant Tad McElroy sought writs in the Court of Appeal and then in this Court. In his Assignments of Error, he complained of the trial court's allowing into evidence the results of a blood alcohol analysis and allowing a forensic pathologist to interpret that analysis.
McElroy's complaint about allowing the results of the blood alcohol analysis was essentially twofold. He complained that admitting the hospital record showing the blood alcohol reading violated his physician-patient privilege. He also complained that this Court's decisions in State v. Tanner, 457 So.2d 1172 (La.1984) and State v. Rowell, 517 So.2d 799 (La. 1988) were offended by the admission of a blood alcohol test result obtained in the absence of compliance with Department of Public Safety standards for blood alcohol test accuracy, including operator certification and equipment maintenance. A majority of this Court, summarily and without reasons (although citing State v. Tanner and State v. Rowell) granted defendant's application, reversed his conviction and sentence, and remanded the case to the trial court for a new trial. 541 So.2d 1386. Thereafter we granted the state's application for rehearing in order to entertain the state's contention that we were wrong in reversing the conviction and to give more thorough treatment to the two issues raised by defendant.
*458 Upon reconsideration, once again we reverse defendant's conviction and sentence and remand for a new trial. Although we find merit in the state's contention that the blood alcohol results and the pathologist's testimony were admissible notwithstanding the test's lack of conformity with the requirements of La. R.S. 32:661-666, we nonetheless conclude that it constituted error to admit the blood alcohol analysis in violation of defendant's physician-patient privilege and over his objections. The admission of the blood alcohol result, coupled with the pathologist's testimony which relied on that result, was prejudicial.
We treat first the state's meritorious contention that the blood test result was admissible even though not obtained as required by R.S. 32:661-666 and Rowell. The state conceded at the outset of the trial that they could not and would not rely on the statutory presumption of intoxication found in R.S. 32:662. They made no different argument here and they are correct. The blood alcohol test in this case was not administered in accordance with R.S. 32:661(A)(2), at the direction of a law enforcement officer, nor performed in accordance with R.S. 32:663, according to methods approved by the Department of Public Safety or by an individual possessing a valid permit issued by the Department.
Nonetheless, the state contends that, under State v. Jones, 316 So.2d 100, 105 (La. 1975), it may attempt to introduce blood alcohol evidence other than that obtained in strict conformity with the statute and with Rowell, with the caveat that such evidence would not trigger the statutory presumption of intoxication found in R.S. 32:662. In this regard, the state is correct. As we noted in Jones:
The State may wish to rely, in attempting to meet its burden of proof, on testimony of arresting officers and others which relate indicia of intoxication discernible by the senses of sight, sound, or smell. Alternatively or additionally, the State may wish to present expert testimony, after there has been testimony of careful adherence to strict procedures in administering intoxication tests, to the effect that the measured level of alcohol concentration would impair the ability to function of the tested person to the extent that he would consider him intoxicated.
Jones, 316 So.2d at 105.
Thus, without the benefit of the statutory presumption of intoxication, the state may nonetheless endeavor to prove that a defendant was guilty of driving while intoxicated, and, in the process, attempt to use all admissible evidence, including the hospital record, the testimony of the technologist performing the blood alcohol test, and expert testimony concerning the likely effect upon an individual of a given blood alcohol level.[1]
However, although Rowell is no help to this defendant, his assignment of error is nevertheless meritorious insofar as it complains that the result of the blood alcohol test was inadmissible for another reason. Introduction of the blood alcohol level over his objection violated his physician-patient *459 privilege. That privilege was violated when the medical technologist's testimony divulged the results of the blood alcohol test and when the court admitted the defendant's hospital record, including the laboratory report, into evidence.
At trial, the state presented the testimony of three witnesses. State Trooper Kenneth Bailey testified that at approximately 2:00 A.M. on April 10, 1988, he investigated a one-vehicle accident. He found McElroy standing beside an overturned pickup truck in the right hand lane of a bridge on U.S. highway 171 in Calcasieu Parish. Bailey advised McElroy of his rights. McElroy admitted that he had been driving the vehicle when it overturned and that, before the accident, he had been drinking beer. Bailey testified that McElroy's breath smelled of alcohol, his speech was slurred, and he had difficulty walking.
McElroy sustained minor injuries and was therefore transported by private ambulance to Moss Regional Hospital. Trooper Bailey waited at the scene for a towtruck to clear the highway and then proceeded to the hospital to complete his investigation. There he learned that the emergency room physician, Dr. Larry Parker, had ordered a blood test on the defendant. Bailey testified that the doctor stated that he had ordered the blood alcohol test to guide him in treating the defendant.
The state's second witness was Lynn Reichard, the medical technician on duty at the hospital. She testified that she drew a blood sample from McElroy in the emergency room and went straight to the lab and tested it. Reichard testified that McElroy was argumentative, cursing, and did not want his blood drawn. When the state questioned Reichard concerning the test result, McElroy objected that this result would fall within the scope of the physician-patient privilege and, under State v. Carter, 383 So.2d 357 (La.1980) should not be admitted into evidence. The trial court ruled that the test result was not privileged. Reichard then testified that the test result showed McElroy had an ethyl alcohol level of 267.5 milligrams per deciliter.
Dr. Welke, a forensic pathologist with the Calcasieu Parish Coroner's Office, testified that he examined the defendant's hospital record, including the emergency room sheet and the lab report on McElroy's blood alcohol test. Welke state that McElroy's blood alcohol level was the equivalent to a percent by weight of 0.26 grams of alcohol per hundred cubic centimeters of blood. Welke testified that in his opinion it would be unsafe for an individual with McElroy's blood alcohol level to operate heavy equipment. The state offered the hospital record into evidence, including the blood test result. McElroy again objected on the basis of his physician-patient privilege. The court overruled the objection and the record was admitted.
The statute establishing the physician-patient privilege is found at La. R.S. 15:476 and provides as follows:

No physician is permitted, whether during or after the termination of his employment as such, unless with his patient's express consent, to disclose any communication made to him as such physician by or on behalf of his patient, or the result of any investigation made into the patient's physical or mental condition, or any opinion based upon such investigation, or any information that he may have gotten by reason of his being such physician; provided, that the provisions of this article shall not apply to any physician, who under the appointment of the court, and not by a selection of the patient, has made investigation into the patient's physical or mental condition; provided, further, that any physician may be cross-examined upon the correctness of any certificate issued by him. (Emphasis added).
In this case, the emergency room physician did not testify and thus did not personally "disclose" anything within the scope of the statutory privilege. On the other hand, the hospital record certainly disclosed "the result of an investigation made into the patient's physical ... condition" by the doctor. A reasonable construction of the statute would encompass within the privilege not only actual testimony of the patient's physician but also the results of any medical *460 investigation ordered by that physician and contained within the patient's hospital chart or record. Consequently we conclude that neither the hospital record revealing the result of the physician's investigation into the patient's condition nor the treating physician's testimony regarding same may be admitted when the defendant invokes his physician-patient privilege.
In this instance, although the blood sample was not drawn, nor the blood test performed, by the treating physician, the investigation was conducted at the physician's direction by a technician acting as the physician's agent. See E. Cleary, McCormick on Evidence §§ 101 & 313 (3d ed. 1984). Thus, the information obtained by the technician and incorporated into the defendant's hospital record falls within the scope of the statutory privilege. Furthermore, in this case, the physician ordered the blood test for the purpose of diagnosing and treating the defendant. The test was not administered at the direction of a law enforcement officer for purposes of determining whether the defendant was guilty of driving while intoxicated.
The state, on the other hand, argues that R.S. 13:3714[2] makes the hospital record admissible as an exception to the hearsay rule, citing State v. O'Brien, 255 La. 704, 232 So.2d 484 (1970). O'Brien has been criticized, although not directly overruled, in State v. Walker, 376 So.2d 92, 94 n. 4 (La.1979) and State v. Carter, 383 So.2d 357, 360 (La. 1980), and by the commentators. See, e.g., Pugh & McClelland, Evidence, 41 La.L.Rev. 595, 610 (1981). As this Court stated in Carter: "The medical records exception to the hearsay rule does not contemplate avoidance of the privilege by including confidential privileged communications in otherwise admissible records. The hearsay exception only applies to non-privileged matters." Carter, 383 So.2d at 360.
It is evident that the hospital records exception to the hearsay rule does not override the statutory physician-patient privilege. Obviating the hearsay objection to the admission of hospital records does not eliminate the bar to admissibility posed by the physician-patient privilege, when that privilege has been properly invoked. The significant question is simply whether the privilege properly applies in this circumstance.
In Carter, 383 So.2d at 359, we recognized two prerequisites to the attachment of the physician-patient privilege. First, "the patient must have consulted the physician for treatment or for diagnosis looking toward treatment." Id. Second, the communication between patient and physician, or, in this case, the results of the physician's investigation into the patient's physical condition, must be made in confidence.
In this case, the privilege meets the two requirements previously recognized by this Court. First, the defendant consulted the physician for treatment, or for diagnosis looking toward treatment, by entering the hospital's emergency room and being accepted for treatment by the hospital's emergency room physician. Second, although he initially protested, the defendant offered his blood sample in confidence to his physician in response to the physician's order and in cooperation with the physician's agent, the medical technologist. The defendant's protests were only overcome when the registered nurse on duty, an agent of the doctor's, explained to the defendant that the doctor had ordered the test and the sample had to been drawn.
The foregoing distinguish McElroy's case from those in which we have ruled that the privilege was not applicable. In State v. Berry, 324 So.2d 822, 828 (La. 1976), the defendant objected to admission of results *461 of the coroner's physical examination made of him shortly after his arrest. The Court found that the privilege did not attach because the accused had not consulted the physician for diagnosis or treatment. Rather, the examination was a mandatory step in the incarceration process. Id. at 828. In both Berry, 324 So.2d at 827, and State v. Aucoin, 362 So.2d 503 (La.1978), the Court held that a defendant had waived the privilege by placing his mental state in controversy through a plea of not guilty and not guilty by reason of insanity. When the defendant enters such a plea, the defendant waives the privilege "only as to such information as is genuinely relevant to the narrow issue tendered." Aucoin, 362 So.2d at 505.
By contrast, in Walker, supra, the state was prevented from offering the testimony of a defendant's treating physician. Although the defendant was incarcerated and treatment was rendered by the prison's medical director, the defendant had voluntarily sought out that physician for diagnosis and treatment. Similarly, in Carter, supra, the defendant entered the hospital voluntarily for treatment of a gunshot wound. Before the defendant received treatment, police arrived and placed him under arrest. The Court again found that because the defendant had voluntarily sought treatment, communications between the defendant and the treating physician were privileged.
In this case, the defendant was neither under arrest nor in custody. He was taken by private ambulance to a hospital where a physician undertook to treat him. That physician ordered the blood test in the course of treatment and diagnosis. The physician-patient privilege attached. Under the explicit terms of the statute, the defendant's invocation of the privilege at trial was in order, and the admission of his hospital record and blood test results over his attempt to invoke the privilege was erroneous.
Although there was other evidence of his intoxication, the trial court's verdict cannot be sustained unless this Court is convinced, beyond a reasonable doubt, that the admission of the privileged evidence did not influence the court's decision to the prejudice of this defendant. See Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967) ("[B]efore ... error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."). In this case, although the trial court was impressed with the trooper's testimony that the defendant admitted to drinking beer and driving the vehicle, the court's ruling was based on the entirety of the evidence before him. The court stated that, "considering all of the testimony and evidence," it was satisfied that the defendant was driving a motor vehicle while under the influence of alcohol. We cannot say beyond a reasonable doubt that the defendant would have been convicted without the admission of the 267.5 milligrams per deciliter blood alcohol test result and the pathologist's testimony. Therefore, this defendant is entitled to a new trial and a verdict based on evidence excluding the blood alcohol test result.

Decree
For the foregoing reasons the judgment of this Court initially, reversing the defendant's conviction for driving while intoxicated and remanding for a new trial, is reinstated.
JUDGMENT REINSTATED.
DENNIS, J., concurs with reasons.
LEMMON, J., concurs and assigns reasons.
MARCUS and COLE, JJ., dissent and assign reasons.
LEMMON, Justice, concurring.
One purpose of the physician-patient privilege is to encourage persons seeking medical care to undergo testing and/or treatment without fear of disclosure of the results of such testing or treatment in collateral legal proceedings.
Relator at first refused to allow his blood to be withdrawn by hospital personnel for *462 testing.[1] He was persuaded to submit to the test on the basis that the results were needed for appropriate treatment of his injuries sustained in the accident. Under these circumstances the physician-patient privilege attached, and the test results should be kept confidential. Allowing disclosure of the test results in a collateral criminal proceeding arising out of the same accident would frustrate the purpose of the privilege.
MARCUS, Justice, dissenting.
I agree with the trial judge that the test result was not privileged. As stated in my dissent in Carter, a statute creating a physician-patient privilege should be strictly construed in that it precludes the introduction of relevant evidence not otherwise constitutionally protected. Under the circumstances of the instant case, I do not consider that defendant expected the result of the blood test to be confidential. Accordingly, I respectfully dissent.
COLE, Justice, dissenting.
In its zeal to apply the physician-patient privilege to this case, the majority ignores the reasons underlying the creation of that privilege. In State v. Aucoin, 362 So.2d 503 (La. 1978), Justice Tate cautioned against a mechanical application of the privilege:
As the commentators note, the physician-patient privilege is not an incompetency statute, excluding certain witnesses or evidence because of presumed untrustworthiness. Rather, it is a statutory privilege, excluding a certain class of information, which may well be highly reliable, in order to advance an intended social policy. Accordingly, it may be appropriate for courts to inquire whether the information sought to be excluded is really in the class whose exclusion will advance the policy and which was intended to be excluded.
362 So.2d at 506.
The clear policy behind the privilege is to encourage freedom of disclosure by the patient so as to aid in the effective treatment of disease and injury. McCormick on Evidence, § 98 (3rd Ed.1972). Such a policy envisions the existence of the traditional physician/patient relationship in which the patient has an expectation of confidentiality. Furthermore, the use of the word "employment" in La. R.S. 15:476 implies that the patient has consciously employed the physician, giving rise to the physician/patient realtionship.
In the present case, however, the majority ignores these considerations and applies the privilege in a blanket manner to emergency room physicians in the absence of any recognizable physician/patient relationship. A review of the record shows that Trooper Bailey of the Louisiana State Police was dispatched to investigate a one car accident involving defendant. Trooper Bailey testified that defendant acted "very belligerent" toward him and appeared to be "highly intoxicated." At no point in the record is there any indication that defendant requested medical treatment. Rather, it was apparently at the instigation of Trooper Bailey that an ambulance was called and defendant was brought to the emergency room. Upon reaching the emergency room, defendant cursed, was argumentative to the hospital personnel and indicated he did not want any blood drawn from him. Given these facts, it is difficult to comprehend how the majority finds a physician/patient relation as contemplated by La. R.S. 15:476 came into being. Clearly, excluding evidence of a blood test taken under such circumstances will in no way further the policy behind the patient/physician privilege. The majority errs in so holding.
Secondly, the majority errs in failing to admit the record of the blood alcohol test under La. R.S. 13:3714:
Whenever a certified copy of the chart or record of any hospital, signed by the administrator or the medical records librarian of the hospital in question, is offered in evidence in any court of competent jurisdiction, it shall be received in *463 evidence by such court as prima facie proof of its contents, provided that the party against whom the record is sought to be used may summon and examine those making the original of said record as witnesses under cross-examination.
This court interpreted this statute in State v. O'Brien, 255 La. 704, 232 So.2d 484 (1970). O'Brien involved a defendant who was transported to Charity Hospital. The defendant was found to be suffering from heroin withdrawal symptoms and this fact was noted in the hospital records. When the state attempted to introduce the records at trial, defendant claimed they were protected by the physician/patient privilege. This court wrote:
The above-quoted statute [La. R.S. 13:3714] supplies a complete answer to counsel's claim that the admission of the hospital record was in violation of the physician-patient privilege as provided by R.S. 15:476, for that general statute is inapplicable to matters arising under the provisions of this special law, which was enacted in 1938, amended in 1952 by Act 519 and again amended and broaden in its scope by Act 161 of 1966.
232 So.2d at 489 (emphasis added).
In attempting to distinguish O'Brien from the present case, the majority relies on State v. Carter, 383 So.2d 357 (La.1980). However, a review of the facts of Carter show the case is very different from the one at hand. In Carter, an arrested defendant suffering from gunshot wounds was brought into the emergency room at Charity. When asked by the emergency room doctor how he received the wounds, defendant stated he had "attempted to rob a lady and she pulled a gun out of her pocket and shot him." The doctor noted this statement in his records. This court held the doctor's testimony was inadmissible under the physician/patient privilege and his records were not admissible under La. R.S. 13:3714.
While it is somewhat questionable whether the Carter court even correctly applied the privilege, the facts were at least stronger than those in the present case. The Carter defendant made a conscious admission to his doctor, one which was potentially incriminating and which he might expect would be kept in confidence. The Carter defendant presumably made his statement to assist the doctor in his treatment decisions. By contrast, the defendant in present case make no admissions and in fact took a hostile attitude toward any treatment. The records of the blood test are not records of any communication or admission of defendant. Rather, they are simply recording of objective facts, just as the records in O'Brien.
Clearly, once the privilege attaches to a statement, the state may not attempt to circumvent that privilege via the hospital records. However, under the facts of the present case, where there is no traditional physician/patient relationship, nor any conscious communication by the patient, there is no reason for not following the clear holding of O'Brien. See also State v. Berluchaux, 522 So.2d 600 (La.App. 1st Cir. 1988).
For these reasons, I respectfully dissent.
NOTES
[1] Generally, the blood alcohol test result, as part of a hospital record, is admissible absent compliance with Rowell providing that the trier of fact is not charged with the statutory presumption of intoxication. This is not to say, however, that the district court is bound to admit a hospital record or a blood level report in all instances. Should there be no predominant evidence of "careful adherence to strict procedures in administering intoxication tests," State v. Jones, 316 So.2d at 105, or in the event that a defendant takes issue with the qualifications of the technician, the quality of the testing machine, or the maintenance of the equipment, and so forth, the court, in the interest of due process and fairness, may well be entitled to bar the evidence. We are not confronted with that situation in this case because the defendant did not specifically object to the accuracy of the hospital record or blood alcohol test result. Rather, the defendant invoked Rowell, which concerns the adequacy of D.P.S. regulations governing blood alcohol testing when the state relies on the statutory presumption of intoxication, and we have determined that Rowell is not pertinent when the state does not rely on the statutory presumption of intoxication.

In all events, we need not decide whether the the blood alcohol test performed in this case was adequate to satisfy the defendant's due process rights because we reverse on an independent ground, i.e., the defendant's invocation of his physician-patient privilege, which bars the admission of the blood alcohol test result.
[2] That statute provides:

Whenever a certified copy of the chart or record of any hospital, signed by the administrator or the medical records librarian of the hospital in question, is offered in evidence in any court of competent jurisdiction, it shall be received in evidence by such court as prima facie proof of its contents, provided that the party against whom the record is sought to be used may summon and examine those making the original of said record as witnesses under cross-examination.
La. R.S. 13:3714.
[1] If the police had requested a blood alcohol test, relator had the right to refuse the test, although he would be subject to the loss of his license for six months. La. R.S. 32:667B(2).