DENNIS, Justice,
concurring with reasons.
I respectfully concur. Although the majority has adopted an expansive interpretation of our admittedly broad statute, 553 So.2d 456 (La.1989), I believe that it intends to restrict the privilege to information obtained by hospital personnel as agents of the treating physician and for the purpose of aiding the physician in treatment and diagnosis. This has been the interpretation of similar physician-patient privilege statutes in most states. See E. Cleary, McCormick on Evidence §§ 100, 101 & 313 (3rd ed. 1984); Annotation, 47 A.L.R.2d 742 (1956).
I cannot subscribe, however, to the majority’s dicta regarding the admissibility of blood alcohol readings that do not comply with the Department of Public Safety regulations or this court’s opinion in State v. Rowell, 517 So.2d 799 (La.1988). The majority descibes the state’s claim that these results are admissible as “meritorious,” and says that “the state is correct” in arguing that such results may be admitted by simply disclaiming the presumption. The opinion concludes:
[Wjithout the benefit of the statutory presumption of intoxication, the state may nonetheless endeavor to prove that a defendant was guilty of driving while intoxicated, and, in the process, attempt to use all admissible evidence, including the hospital record, the testimony of the technologist performing the blood alcohol test, and expert testimony concerning the likely effect upon an individual of a given blood alcohol level. 553 So.2d at 458 (emphasis added).
Finally, after indicating that the blood test results would be admissible, the majority states in a footnote that due process might be violated by the admission of some tests that do not comply with Rowell, and notes that we need not decide whether this test would be admissible because we reverse on other grounds. 553 So.2d at 458 n. 1.
The unique nature of blood alcohol evidence persuades me that such non-conforming tests should be inadmissible whether the state relies upon the statutory presumption or not. There are very basic due process problems involved in introducing blood alcohol tests that were not taken in conformity with our state’s guidelines for admissibility. These guidelines were not imposed simply to make life difficult for police officers and district attorneys dealing with DWI cases; they were placed in the regulations to ensure the reliability and accuracy of scientific tests that in themselves resolve the question of guilt and innocence. The present case involves tests administered in a hospital, but tests in future cases might not be from such a presumptively reliable source. Although these problems are recognized in the footnote, that location combined with the breadth of the statements in the text leads one to reasonably conclude that the majority considers these problems of such minor importance that they did not rate mention in the body of the opinion itself.
While the majority does offer some recognition of the difficulties of ensuring accuracy presented by its conclusion, it does not even mention, much less consider, the potentially overwhelming prejudicial effects of admitting blood alcohol test results “without the benefit of the statutory presumption.” Because of the notoriety of the problem of drunken driving in today’s society, the average citizen is well aware of the syllogism that “.10 = drunk.” Thus, even when the prosecution is deprived of the formal statutory presumption, it may still take advantage of the presumption in the mind of any reasonably well-informed fact-finder.
This informal but real presumption has become ingrained by decades of state enforcement of DWI laws by means of the .10 standard. Nor is this problem limit *1017 ed to juries. I suspect that many judges would conclude that a person with that reading was intoxicated when it was taken, in the absence of substantial evidence to the contrary. Since the presentation of countervailing evidence would be necessary to dissuade the fact-finder of the defendant’s guilt, the effect of introducing this evidence “without the presumption” is the same as that of introducing it with the presumption: The burden of proof is shifted to the defendant. While highly probative, this evidence is also extremely, almost fatally, prejudicial, and it thus presents serious questions of admissibility under both our prior evidence law and the Code of Evidence. See La.Code Evid. 403.
The majority’s inadequate treatment of the objections to the admissibility of the results may result from the fact that the discussion was unnecessary to its holding. The court concludes that the evidence was privileged but proceeds nevertheless to make accordion-like statements, expanded in the text, contracted in the footnotes, that may lead to mischief in future cases. The majority’s dicta suggests a method of circumventing the regulations and our prior decisions. By merely invoking the magical words, “without the statutory presumption,” the prosecution can use any test result. Once the fact-finder sees or hears “.10,” the ease will be over for the average defendant. Although wealthier defendants may be able to hire experts to testify that they were not intoxicated, this type of defense is not reasonably available to most defendants. Even greater disparity in the treatment of impecunious defendants will result if the state fully avails itself of the majority’s invitation to circumvent our pri- or decisions and the regulations adopted pursuant thereto. Accordingly, I concur in the judgment, but I cannot join in the majority’s unfortunate statements in dicta.